[L.A. No. 31449. Aug. 30, 1982.]

YOLANDA DAVIDSON et al., Plaintiffs and Appellants, v.
CITY OF WESTMINSTER et al., Defendants and Respondents.

COUNSEL

Jack Hylton Clark and Peake & Clark for Plaintiffs and Appellants.

Glen E. Tucker, Wood, Tucker & Ward and Bonelli, Wood & Heib for Defendants and Respondents.

John W. Witt, City Attorney (San Diego), Ronald L. Johnson, Chief Deputy City Attorney, and Eugene P. Gordon, Deputy City Attorney, as Amici Curiae on behalf of Defendants and Respondents.

OPINION

KAUS, J.—Plaintiffs Yolanda Davidson and her husband appeal from a judgment of dismissal entered in favor of defendants City of Westminster (city) and Police Officers Varner and Rosenwirth, after defendants' general demurrer was sustained with leave to amend and plaintiffs elected not to do so. We affirm.

According to the complaint, Yolanda Davidson was stabbed four times by Jack Blackmun while in a public laundromat. On three earlier occasions women had been stabbed at the same or nearby laundromats. The evening before Yolanda's stabbing, two police officers had the laundromat under surveillance when another stabbing occurred; the police chased the suspect but failed to catch him. The next evening the officers had the laundromat under surveillance for the purpose of preventing assaults and apprehending the felon. The officers were aware of Yolanda's presence in the laundromat throughout the surveillance. After about an hour of surveillance, they saw a man on the premises who closely resembled the attacker of the previous evening and, while watching him for 15 minutes, identified him as the likely perpetrator of that assault. As the officers watched, the suspect entered and left the laundromat "several times." The officers did not warn Yolanda. Eventually she was stabbed.

Yolanda seeks to recover from the city and the officers on the basis of causes of action for intentional and negligent infliction of emotional distress and for negligent investigation, failure to protect, and failure to warn. The causes of action in negligence allege that special relationships existed between Yolanda and the officers as well as between the assailant and the officers, each of which imposed a duty of care on the officers.[1]

Defendants demurred, contending (1) that no "special relationship" giving rise to a duty of care existed under the allegations of the complaint, and (2) that, in any event, the action was barred under the immunity provisions of Government Code section 845, which absolve a public entity or employee of liability for failure to provide adequate police protection.[2] Without indicating the grounds for its ruling, the trial court sustained the demurrer. On this appeal, plaintiffs maintain that neither of the defendants' arguments support the trial court judgment.

## I. *The Negligence Claims*

In sorting out the issues presented, it is important to consider first things first. Conceptually, the question of the applicability of a statu-

[1] Yolanda's husband joins in several of the causes of action and also seeks to recover for loss of consortium. Three causes of action which name the assailant and his parents are unaffected by this proceeding.

[2] Section 845: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

tory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity. This logical sequence of inquiry was overlooked in dicta in at least three Court of Appeal cases: *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332]; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872 [109 Cal.Rptr. 470]. The fallacy was exposed in *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 704 [141 Cal.Rptr. 189], where Justice Reynoso, writing for the Court of Appeal, arrayed the subjects of the inquiry in proper order: "The parties assume that if we conclude the alleged facts establish as a matter of law the existence of a 'special relationship' (a relationship giving rise to the county's duty to act prudently, and appellants' justifiable reliance thereon) we will obviate the need to consider whether respondents are immune from liability under sovereign immunity principles. Implicit in this exception theory is the assumption the 'special relationship' creates an affirmative governmental responsibility which when breached gives rise to governmental liability notwithstanding the discretionary (immunized) character of the tortious act." The *Whitcombe* court disagreed, correctly explaining that the question of "'duty' [to which the special relationship concept pertains] is only a threshold issue, beyond which remain the immunity barriers . . . ." (73 Cal.App.3d at p. 706.)

Just as immunity hurdles are not overcome by the existence of a special relationship, so does the possible inapplicability of immunity not create a special relationship where none otherwise exists. As Professor Van Alstyne summarizes the problem in California Government Tort Liability Practice (Cont.Ed.Bar 1980) section 2.65: "Some of the cases represent an unnecessary effort to categorize the acts or omissions in question as immune discretionary functions, when the same result could be reached on the ground that the facts fail to show the existence of any duty owed to plaintiff or any negligence on the part of the police officers. See, *e.g., McCarthy* v. *Frost, supra*; *Bratt* v. *San Francisco* [(1975) 50 Cal.App.3d 550 (123 Cal.Rptr. 774)]. Absence of duty is a particularly useful and conceptually more satisfactory rationale where, absent any 'special relationship' between the officers and the plaintiff, the alleged tort consists merely in police nonfeasance. See, *e.g., Mikialian* v. *Los Angeles* (1978) 79 CA3d 150, 144 CR 794 (no duty of police to place flares for protection of tow truck operator); *J. A. Meyers & Co.* v. *Los Angeles County Probation Dep't* (1978) 78 CA3d 309,

144 CR 186 (no duty of probation officers to disclose criminal record of probationer to prospective employer).”

Accordingly, we turn first to the question of special relationship. Since we conclude that there is no special relationship in this case that would establish a duty of care for negligence liability purposes, we need not reach the issue of statutory immunity.

■ As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if “(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection.” (Rest. 2d. Torts (1965) § 315; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 751-752 [167 Cal.Rptr. 70, 614 P.2d 728]; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) Plaintiffs urge that defendants are liable under both theories.

■ In determining the existence of a duty of care in a given case, pertinent factors to consider include the “foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.” (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) “When public agencies are involved, additional elements include ‘the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget; ...’ (*Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]; see *Smith* v. *Alameda County Social Services Agency, supra,* 90 Cal.App.3d 929 [153 Cal.Rptr. 712].)” (*Thompson, supra,* 27 Cal.3d at p. 750.)

This court has considered the duty of care owed by police or correctional officials in a trilogy of cases, *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, *Thompson* v. *County of Alameda, su-*

*pra*, 27 Cal.3d 741, and the earlier case of *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352].

In *Johnson*, the plaintiff was attacked by a minor who was placed in her foster home by the Youth Authority with no warning of the minor's known homicidal tendencies. We held that the state owed a duty of care to plaintiff: "As the party placing the youth with Mrs. Johnson, the state's relationship to plaintiff was such that its duty extended to warning of latent, dangerous qualities suggested by the parolee's history or character. [Citations.] These cases impose a duty upon *those who create a foreseeable peril*, not readily discoverable by endangered persons, to warn them of such potential peril." (69 Cal.2d at pp. 785-786; italics added.)

In *Tarasoff*, where a particular individual (Tatiana) was the subject of threats by an eventual assailant (Poddar), we held that the defendant therapists who heard the threats had a duty to exercise due care to warn the potential victim. The duty arose from the special relation between a patient and his doctor or psychotherapist, generally recognized as supporting an affirmative duty for the benefit not only of the patient but of other persons as well. (17 Cal.3d at p. 436; *Vistica* v. *Presbyterian Hospital* (1967) 67 Cal.2d 465, 469 [62 Cal.Rptr. 577, 432 P.2d 193].)

Nevertheless, as to certain police defendants, who had briefly detained and then released Poddar, we concluded that "they do not have any such special relationship to either Tatiana or to Poddar sufficient to impose upon such defendants a duty to warn respecting Poddar's violent intentions. (See *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6, 9-10 [120 Cal.Rptr. 5]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588, 593 [114 Cal.Rptr. 332].) Plaintiffs suggest no theory, and plead no facts that give rise to any duty to warn on the part of the police defendants absent such a special relationship." (17 Cal.3d at p. 444; fn. omitted.) We further considered and rejected the possibility that a cause of action could be stated under the principles of Restatement Second of Torts, section 321, that "If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect."

*Thompson*, like *Tarasoff*, came to this court at the pleading stage. The county was sued for negligence in failing to warn the local police

and the parents of neighborhood children that a juvenile offender who was dangerous and posed a threat to young children was being released into the community and in failing to warn the juvenile's mother of his dangerous propensities. The juvenile then killed a neighborhood child. Basing our decision in part on policy considerations and in part upon an analysis of "foreseeability" within the context of the case, we concluded that the county had no duty to warn the local police, the neighborhood parents, or the juvenile's custodian. Of significance to this case is the court's comments regarding the county's duty to warn the police: "In our view, warnings to the police as urged by plaintiffs ordinarily would be of little benefit in preventing assaults upon members of the public by dangerous persons unless we were simultaneously and additionally to impose a concurrent duty on the police to act upon such warnings. As we noted in *Tarasoff, supra*, [17 Cal.3d 425] no such duty to act exists." (27 Cal.3d at p. 756.)

Guided by the principles set forth in *Johnson, Tarasoff*, and *Thompson*, we examine the relationship between the officers and the assailant and between Yolanda and the officers to decide whether sufficient factors are present to justify the imposition of a duty to warn or otherwise protect Yolanda.

### Special Relationship Between Officers and Assailant

■ It is alleged that the officers recognized Blackmun as a potential assailant because of his resemblance to the suspect of the assault of the prior evening. However, a person's mere proximity to an assailant, even with knowledge of his assaultive tendencies or status as a felon, does not establish a relation imposing a duty to control the assailant's conduct. Yet the assertion of a special relationship between the officers and the assailant derives entirely from the officers' status as policemen and their recognition of the assailant as a dangerous person.[3] ■ On the minimal connection here—a visual identification from a distance—we find no relationship sufficient to impose a duty of care based upon a "special relationship" between the officer and the potential assailant.[4]

---

[3]Note that no duty to warn was imposed on the police in *Tarasoff* where a stronger connection existed between them and Poddar—he had been in custody and was released with knowledge of potential for violence against a specific victim.

[4]Plaintiffs expressly disclaim any intention to impose liability based upon the officers' failure to arrest or otherwise detain the assailant as the perpetrator of the earlier assaults, and thus we need not discuss whether a special relationship may arise from an officer's authority to arrest a particular individual. In any event, injuries resulting from

### Special Relationship Between Yolanda and the Officers

The factors allegedly giving rise to a special relationship between Yolanda and the officers include the decision to conduct the surveillance, the observation of the potential assailant in the laundromat where Yolanda was also present, the recognition of the assailant as the likely perpetrator of a previous assault, the dependence of Yolanda upon the officers to secure her safety, and their failure to intervene by warning or otherwise protecting her.

In *Hartzler* v. *City of San Jose, supra*, 46 Cal.App.3d 6, referred to with approval in *Tarasoff* (17 Cal.3d at p. 444), the court rejected a claim by the administrator of the estate of a woman who was killed by her estranged husband where the police had failed to respond to a plea some 45 minutes before the homicide. In dictum,[5] the court determined that no special relationship existed between the police and the victim justifying any reliance on them for protection. The court noted that the common theme running through the cases in which a special relationship had been found was the voluntary assumption by the public entity or official of a duty toward the injured party.

The court concluded: "Appellant has failed to plead facts supporting an assumption that a special relationship existed between decedent and the San Jose Police Department. The allegation that the police had responded 20 times to her calls and had arrested her husband once does not indicate that the department had assumed a duty toward decedent greater than the duty owed to another member of the public. The police may have responded repeatedly to her calls, only to discover that she was not in danger. Absent an indication that the police had induced decedent's reliance on a promise, express or implied, that they would provide her with protection, it must be concluded that no special relationship existed and that appellant has not stated a cause of action." (*Hartzler, supra*, 46 Cal.App.3d at p. 10; see also *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453] [officer investigating accident directed plaintiff to follow him into middle of intersection where plaintiff was hit by another car; held city liable]; *Martinez* v. *State* (1978) 85 Cal.App.3d 430 [149 Cal.Rptr.

a police decision not to make an arrest fall within the express immunity of Government Code section 846: "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest...."

[5]The court found immunity under section 845 of the Government Code.

519] [no duty to warn victim of a potential assault by dangerous prisoner being released from custody, where no continuing relationship between state and victim]; *Antique Arts Corp. v. City of Torrance, supra*, 39 Cal.App.3d 588 [police radio dispatcher delayed 10 minutes after alert before broadcasting burglary in progress; held city not liable]; *McCarthy v. Frost, supra*, 33 Cal.App.3d 872 [complaint alleged decedent was driving on state highway at a particular time and place, highway patrolmen failed to find him, and death caused by failure to receive timely medical aid; held state and patrolmen not liable]; *Morgan v. County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508] [deputy sheriff voluntarily promised to warn decedent if a prisoner, who had made threats on her life, was released; the prisoner was released, but sheriff did not warn; heirs had cause of action against county].)

Plaintiffs correctly point out that a finding of special relationship does not require a promise or reliance thereon in order to impose a duty of care. They cite *Johnson v. State of California, supra*, 69 Cal.2d 782 and *Mann v. State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], for the proposition that a special relationship may be predicated upon a victim's *dependence* upon the police for protection. In *Mann*, a highway patrolman placed his car with flashing lights behind two cars stalled on the freeway. After a tow truck arrived, the officer departed without warning. He placed no protective flares. Minutes later the stalled car was sideswiped by a passing car and the persons nearby were injured. Holding there was a special relationship imposing a duty to protect, the court reasoned that the injured party was dependent upon the officer who was an expert in traffic safety and the officer, having chosen to investigate and discovering their plight, had a duty to exercise reasonable care.[6]

*Mann* and *Johnson* differ from the instant case in significant respects however. In *Johnson*, for example, the state put the parolee in the victim's home and failed to warn of homicidal tendencies; thus the state *placed* the victim in danger. Here the police were in no way responsible for the presence of either the assailant or the victim in the laundromat.

---

[6]In a similar vein, in *Clemente v. State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799], a highway patrol officer stopped to investigate an accident, questioned the motorcyclist who allegedly hit the plaintiff pedestrian but failed to get the cyclist's name. The officer's negligence in failing to obtain the identity of the wrongdoer rendered him and the state liable when the plaintiff was unable to obtain compensation for his injuries.

In *Mann*, the police officer's conduct contributed to, increased, or changed the risk which would have otherwise existed. The officer stopped to provide assistance, lulling the injured parties into a false sense of security and perhaps preventing other assistance from being sought. After calling the tow truck, the officer withdrew without advising those present that he was leaving, withdrawing the protection of his flashing lights which he had furnished to them and of which they were aware. (Cf. *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150, 165 [144 Cal.Rptr. 794].)

Stripped of its immunity issue, *Johnson* is a straightforward case of liability based on failure to warn of a foreseeable peril created by the defendant and not readily discoverable by the potential victim. (Rest.2d Torts, § 321.) *Mann*, properly read, is a simple application of the "good Samaritan" doctrine. (Rest.2d Torts, §§ 323, 324; see also *Coffee* v. *McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551, 557-558 [105 Cal. Rptr. 358, 503 P.2d 1366]; *Keene* v. *Wiggins* (1977) 69 Cal.App.3d 308, 316 [138 Cal.Rptr. 3]; *McGuigan* v. *Southern Pac. Co.* (1952) 112 Cal.App.2d 704, 718 [247 P.2d 415].)

Neither of these doctrines applies here. Obviously the peril to Yolanda was not created by the officers. She was unaware of their presence and did not rely on them for protection. Their conduct did not change the risk which would have existed in their absence: There is simply no reason to speculate that anyone—Yolanda or Blackmun, victim or assailant—would have acted differently had the officers not placed the laundromat under surveillance.

Nevertheless, we are urged that mere knowledge of Yolanda's danger imposed on the officers a duty to warn the potential victim. We disagree. The very facts of this case confirm us in our belief, voiced in *Tarasoff* (17 Cal.3d at p. 444, fn. 18), that under such circumstances the recognition of a cause of action against police defendants, based on a duty to warn, would raise difficult problems of causation and public policy.

Imposition of a duty to warn Yolanda, premised on the theory that she was a potential victim of a potential assailant, necessarily implies a general duty to warn other potential victims in the vicinity. (See *Thompson* v. *County of Alameda, supra*, 27 Cal.3d at p. 758.) While under some circumstances the police may conclude that such a course of conduct is prudent and necessary, our past decisions teach that it is

inappropriate to impose such a duty—which may paralyze a neighborhood—under pain of tort liability. (See *Hayes* v. *State of California* (1974) 11 Cal.3d 469, 473 [113 Cal.Rptr. 599, 521 P.2d 855].)

In sum, we conclude that no causes of action for negligence are stated by plaintiffs. Although the facts as alleged may establish that Yolanda, or indeed any other woman using the laundromat, was a reasonably foreseeable victim as in *Tarasoff*, that factor alone does not suffice to establish a special relationship with the officers imposing upon them a duty to warn or protect.

## II. *Intentional Infliction of Emotional Distress*

The first cause of action, for intentional infliction of emotional distress, is premised on the same conduct which underlies the negligence claims. It is alleged that the officers "intentionally" used Yolanda as bait for the purpose of attracting the attacker and, as a proximate result of their conduct, she sustained emotional distress.

The elements of a prima facie case for the tort of intentional infliction of emotional distress were summarized in *Cervantez* v. *J. C. Penny Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975], as follows: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497-499 [86 Cal.Rptr. 88, 468 P.2d 216]; *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330, 336-339 [240 P.2d 282]; 4 Witkin, Summary of Cal. Law (8th ed.) Torts, §§ 234-237, pp. 2515-2517.) 'Whether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged.' (*Fletcher* v. *Western National Life Ins. Co.,* *supra*, 10 Cal.App.3d at p. 394; *State Rubbish etc. Assn.* v. *Siliznoff,* *supra*, 38 Cal.2d at p. 339; Rest.2d Torts, § 46, com. g.) Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. (*Alcorn* v. *Anbro Engineering, Inc., supra*, 2 Cal.3d at p. 499, fn. 5; *Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163, 170 [136 Cal.Rptr. 275]; Rest.2d Torts, § 46, com. d.)"

█ The tort calls for intentional, or at least reckless conduct—conduct intended to inflict injury or engaged in with the realization that injury will result. (See *Spackman* v. *Good* (1966) 245 Cal.App.2d 518, 530 [54 Cal.Rptr. 78].) Yet, it is not alleged that the officers acted (or failed to act) as they did for the purpose of causing emotional injury to Yolanda. Indeed, it is claimed that the surveillance was "at all times being conducted ... for the particular purpose of preventing further assaults" and for the "additional particular purpose of apprehending the perpetrator of said assaults."

Insofar as the claim is based on the theory that the officers acted in "reckless disregard of the potential for harm," we think that the trial court properly found as a matter of law that on the alleged facts the officers' conduct did not rise to the level of outrageous conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez, supra,* 24 Cal.3d at p. 593.) Concededly—assuming the allegations of the complaint to be true—the events which preceded the attack on Yolanda did not constitute the defendant officers' finest hour. The complaint alleges in essence that the officers were staked out near the point of an expected attack, apparently planning to intervene after the assailant had committed himself sufficiently to be subject to arrest, but before he had actually injured the intended victim. It may well be that such a plan was poor police procedure and doomed from the start. Its failure, however, was in no way due to any affirmative misconduct on the part of the officers who participated in the stake-out. They started as mere observers and the sum and substance of the criticism directed against them is that they remained such far too long and were late in becoming active participants. Absent an intent to injure, such inaction is not the kind of "extreme and outrageous conduct" that gives rise to liability under the "intentional infliction of emotional distress" tort.

The judgment is affirmed.

Bird, C. J., Mosk, J., Richardson, J., Newman, J., Broussard, J., and Compton, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.