Linda WHITCOMB, Plaintiff-Appellant,

v.

The CITY AND COUNTY OF DENVER, Randy Penn and Carl Gustafson, Defendants-Appellees.

No. 84CA0200.

Colorado Court of Appeals, Div. III.

Aug. 21, 1986.

Rehearing Denied Oct. 16, 1986.

Certiorari Denied (Whitcomb) Jan. 20, 1987.

Leventhal & Bogue, P.C., Jim Leventhal, Denver, for plaintiff-appellant.

Halaby & McCrea, Theodore S. Halaby, Robert M. Liechty, Denver, for defendants-appellees.

BABCOCK, Judge.

Plaintiff, Linda Whitcomb, appeals the judgment notwithstanding the verdict entered dismissing her claim for negligence against defendants, the City and County of Denver and Denver Police Department officers Randy Penn and Carl Gustafson (the officers). We affirm.

The evidence, viewed in the light most favorable to plaintiff, establishes the following events. Near midnight plaintiff ran out of gas while driving southbound on Interstate 25 in a high crime area of Denver. She left her car parked on the shoulder of the highway and walked to a nearby motel. The clerk at the motel refused to assist her in finding transportation to a gas station and refused to give her change for a five dollar bill, which was the only money she had in her possession.

Plaintiff called for police assistance through the 911 emergency number on a pay phone in the lobby of the motel. The officers were dispatched in response to that call. Upon arrival at the motel, they determined that there was no emergency and that plaintiff's car was not a safety hazard.

In answer to plaintiff's request to be taken to a gas station, the officers explained that neither they nor the nearby open gas stations had gas cans. They asked whether there was anyone she could call, and she mentioned her sister as a possibility but refused to call her because she did not want to disturb her at that time of night. The officers offered to call a tow truck but plaintiff refused based on her limited funds. The officers then declined further assistance and left the area.

Plaintiff obtained a ride to a gas station with a couple from the motel and learned that, as the officers had said, there was no gas can available. After about ten minutes, during which plaintiff was repeatedly unsuccessful at obtaining a gas can from customers entering the gas station, the couple who had taken her there left without her.

Plaintiff contacted a woman at the station who was having trouble with her car. Two men were helping the woman put antifreeze in her radiator. In answer to plaintiff's request for a ride home, the woman said she did not know how long she would be at the station, but vouched for the two men who had offered to use the antifreeze container as a gas can and return plaintiff to her car. Plaintiff accepted the offer and got into the men's car. She was later assaulted by these two men.

In her complaint, plaintiff alleged that the officers had a duty to provide her with adequate assistance to insure her safety. The trial court submitted the case to a jury, which returned a verdict for plaintiff in the amount of $25,000, but found that plaintiff was 25% responsible for her own injuries. Accordingly, judgment was entered in favor of plaintiff in the amount of $18,750. Thereafter, defendants' motion for judgment notwithstanding the verdict was granted by the trial court.

Plaintiff contends that the trial court erred in granting defendants' motion for judgment notwithstanding the verdict. We disagree because we conclude that, under the circumstances of this case, defendants owed no duty to protect plaintiff from third persons, and furthermore, defendants are immune from civil liability.

The "special relation rule" enunciated in *Leake v. Cain,* 720 P.2d 152 (Colo.1986) controls our resolution of the issue of duty. In *Leake,* the Supreme Court stated that:

"Where a person should reasonably foresee that his act, or failure to act, will involve an unreasonable risk of harm to another, there is a duty to avoid such harm.... However, there is no duty to prevent a third person from harming another, absent a special relation between the actor and the wrongdoer or between the actor and the victim. Restatement (Second) of Torts § 315 (1965)."

Here, inasmuch as third persons harmed plaintiff, the special relation rule applies,

and, because it is clear from the facts that the officers had no relation with the two men who assaulted plaintiff, our inquiry is limited to whether a special relation existed between the officers and plaintiff.

Plaintiff does not assert that there was any statutory duty imposed on the officers to assist or protect her, and we are aware of none. *See Leake v. Cain, supra.* Therefore, in order for a special relation to have arisen, the officers must have voluntarily assumed a duty to plaintiff by acting affirmatively to induce her to rely on them, or they must have created a peril or changed the nature of an already existing risk. *See Leake v. Cain, supra* (police officers did not induce reliance of accident victim, or create a peril or change the nature of an already existing risk, when they released intoxicated person to the custody of a sober brother who later allowed intoxicated person to drive).

*See also Davidson v. City of Westminster,* 32 Cal.3d 197, 185 Cal.Rptr. 252, 649 P.2d 894 (1982) (police officers did not create stabbing victim's peril, or change the risk which would have existed in their absence, when they failed to protect from, or warn of, suspect they had under surveillance); *Jackson v. Clements,* 146 Cal. App.3d 983, 194 Cal.Rptr. 553 (1983) (police officers did not create accident victim's peril, or alter an already existing risk, when they did not prevent victim from accepting ride with intoxicated driver); *Hartzler v. City of San Jose,* 46 Cal.App.3d 6, 120 Cal.Rptr. 5 (1975) (police officers did not induce stabbing victim's reliance by their awareness of perpetrator's violent tendencies from some 20 prior responses to victim's calls for aid); *cf. Clemente v. State of California,* 101 Cal.App.3d 374, 161 Cal. Rptr. 799 (1980) (police officer assumed duty to completely disabled and apparently incompetent accident victim when hestopped at accident scene and began an investigation by interviewing witness and detaining the driver who had struck the victim); *Mann v. State of California,* 70 Cal. App.3d 773, 139 Cal.Rptr. 82 (1977) (police officer assumed duty to disabled motorist when he stopped and assisted, thereby inducing reliance and changing the risk which would have existed in his absence— explained in *Davidson v. City of Westminster, supra* ).

██ In order for the officers to have assumed voluntarily a duty to plaintiff, they would have had to act affirmatively in some way which affected plaintiff. *See Davidson v. City of Westminster, supra.* Here, once the officers determined that there was no real emergency or hazard, and after plaintiff refused their offer to call a tow truck, they took no further action. There is no indication that plaintiff would have acted in any way differently had the officers never arrived and contacted her. Therefore, the officers did not act affirmatively in a manner which affected plaintiff's situation.

We reject plaintiff's argument that the officers acted affirmatively by merely meeting with her and determining her situation. As a practical matter, the police usually conduct some investigation before exercising discretion whether to take further action. However, for purposes of the "special relation rule," they do not act affirmatively until they act in some way which induces reliance on a promise, express or implied, that they will assist or protect the victim. *See Hartzler v. City of San Jose, supra; cf. Leake v. Cain, supra.* Because the officers here did not indicate that they would assist or protect plaintiff beyond calling a tow truck for her, because she refused their offer, and because she took independent action in contacting others, there was no induced reliance.

██ Moreover, the officers did not create or cause the circumstances in which plaintiff found herself, and they did nothing that changed the nature of her situation. Further, her call to the 911 emergency number did not, by itself, create a special relation with defendants. *Cf. Leake v. Cain, supra; Jackson v. Clements, supra.*

Hence, we conclude that the officers did not voluntarily assume a duty to plaintiff and that, thus, no special relation was created. The officers' duty as it related to protection of the plaintiff from third person assailants began and ended at the motel.

*See Leake v. Cain, supra.* Therefore, the trial court did not err in granting defendants' motion for judgment notwithstanding the verdict.

We further hold that the officers had qualified immunity. A public official performing discretionary acts within the scope of his office enjoys qualified immunity and is protected against civil liability if his conduct is not willful, malicious, or intended to cause harm. *Leake v. Cain, supra.* Here, the decision to assist or not to assist plaintiff was discretionary with the officers. *See Leake v. Cain, supra.*

Although plaintiff found herself in an uncomfortable situation, she had options available to her other than leaving the safety of the motel to look for gas, such as calling a friend or relative. The officers exercised discretionary judgment in deciding not to act further with regard to her situation, and plaintiff neither alleges, nor does the record reflect, any conduct on the part of the officers which was willful, malicious, or intended to cause harm. Therefore, the defendants are immune from civil liability. *See Leake v. Cain, supra.*

The judgment is affirmed.

KELLY and TURSI, JJ., concur.