Pat WHITE, Plaintiff and Appellant,

v.

Paul BLACKBURN, Bishop of the Taylorsville 43rd Ward of the Church of Jesus Christ of Latter–Day Saints, et al., Defendants and Respondents.

No. 890408–CA.

Court of Appeals of Utah.

Feb. 12, 1990.

Brian M. Barnard and C. Dane Nolan, Salt Lake City, for plaintiff and appellant.

Allen M. Swan, Salt Lake City, for defendants and respondents.

Before DAVIDSON, GARFF, and BULLOCK [1], JJ.

GARFF, Judge:

Appellant Pat White appeals the summary judgment granted to respondents Paul Blackburn, the Taylorsville 43rd Ward of the Church of Jesus Christ of Latter Day Saints (43rd Ward),[2] and the Church of Jesus Christ of Latter Day Saints (Church). We affirm.

Blackburn is the bishop of the 43rd Ward. Appellant and her family, including her seventeen-year-old son, Michael, live within the 43rd Ward boundaries. Blackburn, on behalf of the Church, paid for an airplane ticket for Michael to fly to North Carolina without appellant's permission.[3]

Appellant sued, alleging the following causes of action: (1) intentional interference with the parent-child relationship, (2) intentional infliction of emotional distress, (3) negligent infliction of emotional distress, (4) clerical malpractice, and (5) negligence. The trial court granted respondents' motion for summary judgment. Appellant brought this appeal.

We review a summary judgment in the light most favorable to appellant in determining whether there are any genuine issues of material fact based upon the pleadings, depositions, affidavits, and answers to interrogatories, and whether the moving party is entitled to judgment as a matter of law. *Deschamps v. Pulley*, 784 P.2d 471, 472 (Utah Ct.App.1989).

**1.** J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

**2.** A "ward" is an ecclesiastical division of the Church, based upon geographical area.

**3.** The 43rd Ward and the Church concede that the doctrine of respondeat superior would apply if Blackburn were found to be liable in this action.

## INTENTIONAL INTERFERENCE WITH THE PARENT–CHILD RELATIONSHIP

 We find no evidence in the record indicating that respondents intentionally interfered with appellant's parent-child relationship. Blackburn relates that Michael, who attended 43rd Ward activities, told him that he was having problems with his abusive step-father and wanted to find his nineteen-year-old brother who was residing in North Carolina, and bring him back to Utah. He also supposedly told Blackburn that appellant wanted him to go to North Carolina but could not afford to send him.[4] Therefore, he asked Blackburn for Church assistance in going to North Carolina. Blackburn told Michael that he could not help without appellant's permission. Michael informed Blackburn that he should not call appellant at home to get permission because his step-father would hurt him and appellant if he found out.[5] After repeatedly trying unsuccessfully to contact appellant at work, Blackburn told Michael that written permission from appellant would suffice. Michael later produced a note granting permission purportedly written by appellant. Blackburn then paid for Michael's airplane ticket to North Carolina. Subsequently, Blackburn learned that Michael had forged the note. No evidence in the record indicates that Blackburn knew that the note was false at the time he assisted Michael in leaving.

Appellant argues that even though Blackburn did not know the note was forged and did not intend to cause emotional distress, he still committed an intentional act of interference because he should have been substantially certain his conduct would cause harm. She cites *Matheson v.*

**4.** Michael, in his affidavit, denied that he was having trouble with his step-father and stated that his only interest in going to North Carolina was to bring his brother back to Utah so his brother could assist his mother, who needed an operation, while Michael went into the army.

**5.** Michael also denied this statement in his affidavit.

*Pearson*, 619 P.2d 321 (Utah 1980) to support this point. In *Matheson*, which is factually inapposite to the present circumstances, the plaintiff was struck on his head and injured by a tootsie pop which the defendant had thrown from the second floor window of an adjacent school. Our supreme court stated:

> An individual may undertake an intentional act, such as throwing the tootsie pop in this particular case, and if the act is undertaken without an intent to harm or a substantial certainty that harm will result from the act, the actor is not guilty of an intentional tort. Instead ... the activity is properly classified as reckless disregard of safety or reckless misconduct. Such reckless misconduct results when a person, with no intent to cause harm, intentionally performs an act so unreasonable and dangerous that he knows or should know, [sic] it is highly probable that harm will result.

*Matheson*, 619 P.2d at 322. Although Blackburn committed an intentional act by assisting Michael in obtaining an airline ticket, he did not intend to cause harm. Furthermore, his act could hardly be classified as being "so unreasonable and dangerous that he knows or should know it is highly probable that harm could result." *Id.* We, therefore, fail to find any substantial certainty that harm could result, so appellant's argument fails.

Although appellant concedes that there is no existing Utah authority to support the theory of intentional interference with the parent-child relationship, she urges this court to establish such a cause of action. The cases from other jurisdictions she cites to support her position are factually inapposite. Even if we were persuaded that the establishment of such a legal theory has merit, it would fail under the present factual situation because we have just found that Blackburn did not commit any act that was substantially certain to cause harm.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ To support a cause of action for intentional infliction of emotional distress, appellant must show the following elements: (1) outrageous conduct by the defendant; (2) the defendant's intent to cause, or the reckless disregard of the probability of causing, emotional distress; (3) severe emotional distress; and (4) an actual and proximate causal link between the tortious conduct and the emotional distress. *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 763 P.2d 948, 961, 253 Cal.Rptr. 97, 110 (1988); *see also Davidson v. City of Westminster*, 32 Cal.3d 197, 649 P.2d 894, 901, 185 Cal. Rptr. 252, 259 (1982). The Utah Supreme Court has recognized some of the dangers inherent in allegations of intentional infliction of emotional distress:

> [d]ue to the highly subjective and volatile nature of emotional distress and the variability of its causations, the courts have historically been wary of dangers in opening the door to recovery therefor. This is partly because such claims may easily be fabricated: or as sometimes stated, are easy to assert and hard to defend against.

*Samms v. Eccles*, 11 Utah 2d 289, 358 P.2d 344, 345 (Utah 1961); *see also In re Estate of Grimm*, 784 P.2d 1236, 1246 (Utah Ct.App.1989). Consequently, in an action for severe emotional distress, the court has held that the plaintiff must show the offensive behavior to have been perpetrated "(a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Samms*, 358 P.2d at 347; *see also Davidson*, 649 P.2d at 901, 185 Cal.Rptr. at 259 ("conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community").

■ Our review of the record fails to show any behavior approaching the demands of the above authority. Although Blackburn may have been naive and gulli-

ble in his willingness to rely upon Michael's representations as to appellant's desires and authorization, we can see no intent to harm in his actions. As far as Blackburn was concerned, he was complying with appellant's wishes. Certainly, his behavior could not be considered outrageous and intolerable.

We, therefore, find appellant's claim of intentional infliction of emotional distress to be without merit.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

█ In her brief, appellant states that there are no reported Utah cases recognizing the tort of negligent infliction of emotional distress. However, the Utah Supreme Court, in *Johnson v. Rogers*, 763 P.2d 771, 782 (Utah 1988), recognized that such an action may be maintained, but the main opinion did not articulate clear-cut guidelines for recovery. Justice Zimmerman, in a concurring opinion joined by the other justices, thus forming a majority of the court, set forth the standards enunciated in section 313 of the Restatement (Second) of Torts (1965) as the test for determining liability for the negligent infliction of emotional distress. *Id.* at 785.[6]

Section 313 of the Restatement (Second) of Torts (1965) states:

(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

 (a) should have realized that his conduct involved an unreasonable risk of

causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

 (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

(2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

Blackburn's behavior does not meet the criteria of the Restatement in that he could not have realized that his conduct could have involved an unreasonable risk of causing distress to appellant because he believed, albeit wrongly, that she had authorized his behavior. Further, his actions did not create an unreasonable risk of bodily harm to Michael. Therefore, Blackburn's behavior does not fall within the test set forth by Justice Zimmerman, and appellant's argument fails.

## CLERICAL MALPRACTICE

█ Appellant admits that no court has recognized clerical malpractice as a cause of action, but argues that such malpractice exists here, not because respondent, who had not been trained as a counselor, improperly counseled Michael, but because he failed to refer Michael to trained professionals or others who could assist in resolving the family conflicts. In other words, appellant wishes to impose a duty upon Blackburn to make further inquiry into the

---

6. Justice Zimmerman stated:

 I agree that this cause of action does exist in Utah, as the trial court held. However, I depart from Justice Durham with regard to the legal standard by which such a cause of action is to be defined in Utah. Her opinion surveys the law of other states—a helpful exercise—but it declines to choose from among the various possible rules because all seem satisfied in this case. If we were to do no more, courts and counsel would be left entirely without satisfactory guidance in dealing with all cases but the present one. We cannot permit every claim for negligent infliction of emotional distress to go to a jury under such varying standards as each trial judge may choose. We have a practical obligation to articulate understandable standards and to impose workable limits for use in the Utah courts. In the exercise of that function, I think it best to adopt as the test for determining liability for the negligent infliction of emotional distress the standards set forth in section 313 of the Restatement (Second) of Torts (1965), as explained in the comments accompanying that section.

alleged family conflicts, and then, if beyond his expertise, refer Michael to others who are qualified to treat such problems. Under the present circumstances, charging lay clergy with this duty of care goes too far because it approaches the same level of care imposed upon trained professionals in medicine and psychology.

A recent case dealing with clerical malpractice is *Nally v. Grace Community Church of the Valley*, 763 P.2d at 948, 253 Cal.Rptr. at 97. We agree with the California Supreme Court's refusal to recognize a cause of action for "clergyman malpractice." The California court stated:

> On occasion, when the courts have recognized a new duty of care sufficient to impose liability for the breach thereof, they have noted that the "wrongs and injuries involved were both comprehensible and assessable within the existing judicial framework."

> Even assuming that workable standards of care could be established in the present case, an additional difficulty arises in attempting to identify with precision those to whom the duty should apply. Because of the differing theological views espoused by the myriad of religions in our state and practiced by church members, it would certainly be impractical, and quite possibly unconstitutional, to impose a duty of care on pastoral counselors. Such a duty would necessarily be intertwined with the religious philosophy of the particular denomination or ecclesiastical teachings of the religious entity.

> We have previously refused to impose a duty when to do so would involve complex policy decisions, and we are unpersuaded by plaintiffs that we should depart from this policy in the present case.

*Nally*, 763 P.2d at 960, 253 Cal.Rptr. at 109–10 (quoting *Peter W. v. San Francisco Unified School Dist.*, 60 Cal.App.3d 814, 824, 131 Cal.Rptr. 854 (1976)) (citations omitted).

We, similarly, remain unpersuaded that we should establish a cause of action for clerical malpractice and, thereby, generate a new duty of care with its concomitant liabilities.

## NEGLIGENCE

Finally, appellant urges plain negligence as a basis for her claim. The essential elements of negligence are: (1) a duty of reasonable care owed by the defendant to the plaintiff, (2) a breach of that duty, (3) actual and proximate causation of injury, and (4) damages suffered by plaintiff. *Gregory v. Fourthwest Invs., Ltd.*, 754 P.2d 89, 91 (Utah Ct.App.1988); *see also Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985). Appellant suffered no actual damages, but only claimed damages for "mental distress and emotional upheaval." We have already discussed the reasons why she cannot recover for emotional distress. Without actual damages there can be no recovery. *Id.* Therefore, appellant has not stated a cause of action for which relief can be granted and has not suffered compensable damages under any theory of recovery. We, therefore, affirm the trial court's order for summary judgment.[7]

DAVIDSON and BULLOCK, JJ., concur.

---

7. This action borders on being frivolous. For an action to be without merit, it must be, to the best of the acting attorney's knowledge, formed after reasonable inquiry, "well grounded in fact

Appellant Pacific Chromalox Division, Emerson Electric Co. (Chromalox) brought an action against respondents Richard F. Irey (Irey) and Industrial Engineering and Manufacturing Corp. (I.E.M.) for breach of contract and breach of warranty. Respondents counterclaimed for breach of contract and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and ... not interposed for any improper purposes." R.Utah Ct. App. 40(a). This action is neither well grounded in fact nor warranted under existing law, and the effort to extend or modify existing law had only a marginal prospect of success. *See O'Brien v. Rush*, 744 P.2d 306, 310 (Utah Ct.App. 1987).