Andrew JENKINS, et al., Plaintiffs,

v.

MCI TELECOMMUNICATIONS CORP., et al., Defendants.

No. CV 96–3110 JMI (VAPx).

United States District Court, C.D. California.

March 24, 1997.

Margo Bouchet, Margo Bouchet Law Offices, Inglewood, CA, for Andrew Jenkins, Gwendolyn Jenkins.

Anthony J. Oncidi, Christine A. Samsel, Troop Meisinger Steuber & Pasich, Los Angeles, CA, for defendants MCI Telecommunications Corp. and Steve Murphy.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

IDEMAN, District Judge.

**IT IS HEREBY ORDERED:**

On March 18, 1997, Defendants MCI Telecommunications Corp. ("MCI") and Steve Murphy ("Murphy") moved for summary judgment or, in the alternative, summary adjudication. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1441, 1331, and 1367. After careful review and consideration, Defendants' Motion for Summary Judgment is granted.

### BACKGROUND

This is an employment discrimination action. Plaintiffs are Andrew and Gwendolyn Jenkins, husband and wife. Mr. Jenkins was employed by Defendant MCI for a period of eleven years. Defendant Murphy, a white

male, was Andrew Jenkins' direct supervisor at MCI from July 21,. 1995, until Plaintiff's termination from employment. Mr. Jenkins alleges that on September. 26, 1995, he was terminated from employment with MCI because of his race and gender. Mr. Jenkins asserts the following causes of action: (1) violations of Title VII; (2) violations of California's Fair Employment Housing Act ("FEHA"); (3) wrongful discharge in violation of public policy; (4) defamation; (5) violations of 42 U.S.C. §§ 1983 and 1985; (6) retaliatory conduct; (7) fraud and deceit; (8) intentional infliction of emotional distress; and (9) tort in essence/tort in se. Mrs. Jenkins alleges loss of consortium.

Unless otherwise noted, the following facts are undisputed. Plaintiff Andrew Jenkins,[1] a black male, was hired by MCI in 1984 as a Technical Service Consultant ("TSC") and was promoted to TSC Level II in March 1993. Plaintiff was the first TSC in the southern California area, and was initially assigned to cover all of southern California. As additional TSCs were hired in the region, Plaintiff's area of coverage shrunk. Eventually, he was officially assigned to Culver City, where he remained until his termination from employment.

During Plaintiff's final year of employment with MCI, employee turnover caused some vacancies, requiring Mr. Jenkins to assume an increased workload on a temporary basis. Plaintiff's complaints to his supervisors about the increased workload allegedly fell on deaf ears. Plaintiff soon began falling behind on his assigned duties.

Among Plaintiff's duties was the monitoring of and responding to "trouble tickets," messages sent by MCI customers via electronic mail ("e-mail")[2] to Jenkins regarding technical difficulties. Mr. Jenkins normally received about 600 e-mails per week, some requiring immediate attention. After Plaintiff's workload increased, his e-mail backed up by about four weeks. In other words, Plaintiff at one point had not reviewed or responded to approximately 2,800 e-mail messages. Further, Plaintiff had not bothered to respond to messages received by pager regarding customer inquiries, and was having difficulty in responding to even the most critical problems.

According to MCI, management viewed Plaintiff's backlog as a serious problem. Specifically, Mr. Marc Schaub, the individual in charge of Plaintiff's group, viewed Plaintiff's backlog as justification for immediate termination. Defendants also contend that Murphy and Mr. Octavio Mateo, of MCI's Human Resources Department, attempted to work with Plaintiff in a number of ways to correct the problems. Among the proposed solutions was: (1) to delete obsolete messages more than two weeks old; (2) address the backlog after normal working hours; (3) skipping a trimester as a night student to devote more time to his job;[3] and (4) review and respond to e-mails from home, as MCI had given Plaintiff a laptop computer to use for his job.

None of these alternatives was acceptable to Plaintiff, who instead managed to take a number of vacation and personal days in August and September, 1995. These pursuits were made even in the face of a written warning on September 14, 1995. Plaintiff was fired on September 26, 1995, and was replaced by Mr. Cayetano Guerrea, a Hispanic male.

Plaintiff concedes the deficiency in his work. He alleges, however, that Defendants conspired to terminate him from employment on the basis of his race and sex. Plaintiff further claims that the stated reason for his termination was a pretext for unlawful discrimination, and that Defendants retaliated against him for complaining openly about his workload. Further, Plaintiff disputes that Defendants made a good faith effort to resolve the work-related problems prior to termination.

## STANDARD OF REVIEW

Defendants move for summary adjudication or, alternatively, summary judgment on

---

1. All future references to "Plaintiff," unless otherwise noted, are to Plaintiff Andrew Jenkins.

2. MCI regards e-mail as its "lifeline" to aggrieved customers.

3. At the time, Plaintiff was taking advantage of Defendant MCI's tuition reimbursement program. Under the program, Plaintiff was devoting approximately twenty hours per week pursuing a Masters of Business Administration degree at Pepperdine University.

Plaintiffs' claims pursuant to Fed.R.Civ.P. 56. Summary judgment is proper where, based on the appropriate materials submitted, the moving party shows that there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Summary adjudication is appropriate where there exists no genuine issue of material fact as to a particular claim or defense. William W. Schwarzer et al., *California Practice Guide: Federal Civil Procedure Before Trial* § 14:33 (1995).[4] Where the moving party satisfies its burden, the non-moving party may not rest on its pleadings or allegations; it must set forth specific facts showing that no genuine issue of material fact exists. Fed.R.Civ.P. 56(e).

### CIVIL RIGHTS CLAIMS

■ Plaintiff asserts causes of action for violations of his civil rights and for conspiracy to violate his civil rights under 42 U.S.C. §§ 1983 and 1985. Defendants correctly note, however, that Section 1983 gives rise to liability only for violations of civil rights "under the color of" state law. Therefore, state action is a prerequisite for maintaining a cause of action for a violation of civil rights. Because Plaintiff has completely failed to show that Defendants are state actors, his claims fail as a matter of law.

### RACE AND SEX DISCRIMINATION CLAIMS/RETALIATION CLAIM

Plaintiff has asserted causes of action for race and sex discrimination based upon the California Fair Employment Housing Act ("FEHA"), codified at Cal. Gov't Code §§ 12900–12995,[5] and Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e–2000h–6. Plaintiff has also alleged that Defendants retaliated against him for making complaints about his increased work load.

■ Title VII prohibits an employer from discriminating against any individual on the bases of, among other things, race or sex. *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991). A plaintiff may show discrimination under theories of disparate treatment, disparate impact, or by proving that a hostile work environment existed. *Id.* Plaintiff in this action is proceeding exclusively under a theory of disparate treatment, alleging that intentional discrimination took place.

■ Plaintiff alleges disparate treatment under a "single motive" and "mixed motive"[6] theory of discrimination. Under the "single motive" theory, a plaintiff to succeed must establish a *prima facie* case of discrimination "by introducing evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Sischo–Nownejad*, 934 F.2d at 1109. Upon such a showing, the burden of persuasion then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for its action. *Id.* At that time, the burden of persuasion shifts back to the plaintiff, who must prove "that the articulated reason is pretextual." *Id.*[7]

---

4. Motions for summary adjudication are commonly referred to as a motions for partial summary judgment, though this is improper, as no "judgment" actually occurs. Schwarzer at § 14:34.

5. Because the statutory provisions of Title VII and the FEHA possess identical objectives and public policy considerations, California courts refer to federal decisions when interpreting analogous provisions of the FEHA. *Greene v. Pomona Unified School Dist.*, 32 Cal.App.4th 1216, 1222 n. 6, 38 Cal.Rptr.2d 770 (2nd Dist.1995). Therefore, while this analysis is couched in federal terms, it is applicable to Plaintiff's FEHA claims.

6. Under a "mixed motive" theory, a plaintiff must first show that gender or race played a motivating role in an employment decision. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 244, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989). The burden then falls on the defendant to show that it would have made the same decision even if it had not allowed race or gender to become a factor. *Id.* at 244–45, 109 S.Ct. at 1787–88. For the reasons stated herein, Plaintiff cannot show that race, gender, or retaliation played a factor in Plaintiff's termination from employment. Therefore, his claim under this theory fails.

7. The standard for state and federal retaliation claims is the same, as a plaintiff must first make out a *prima facie* case, showing that a causal connection exists between the plaintiff's protect-

The amount of evidence required to establish a *prima facie* case is "very little." *Sischo–Nownejad*, 934 F.2d at 1111. Nevertheless, Plaintiff has failed to meet this minimal burden. On December 20, 1996, Plaintiff was served with a number of requests for admissions. Among those served, Plaintiff was requested to admit that he had "no evidence" that Defendants discriminated against him on the basis of race and sex, and was also requested to admit that he had no evidence of retaliatory conduct. Plaintiff concedes that he failed to respond to these requests within thirty days after service of the request. Therefore, it is deemed that Plaintiff has made each of these admissions. Fed.R.Civ.P. 36(a).[8] Summary adjudication is appropriate on each of these claims.

Further, Plaintiff has utterly failed to offer any genuine evidence, direct or circumstantial, to support his argument that Defendant's conduct was motivated by considerations of race or gender. For example, Mr. Jenkins merely concludes that because he made his work-related complaints to Mr. Ken Vogel, a white employee, his subsequent dismissal "must be" the result of racial prejudice. Such bare speculation cannot support a *prima facie* case of discrimination. *DeHorney v. Bank of America Nat'l Trust and Sav.*, 879 F.2d 459, 468 (9th Cir.1989).

Nor can a case so barren of proof as this support the notion that Defendants' acts were a mere pretext for discrimination or retaliation. Defendants maintain that Plaintiff was fired because he failed to performed his assigned duties in a satisfactory fashion. The facts giving rise to this assertion are undisputed, and as such are an articulate, legitimate, and nondiscriminatory reason for Plaintiff's termination.

Plaintiff responds by arguing, again in conclusory fashion, that these reasons were a

sham to hide alleged discriminatory animus that existed at MCI. No reasonable jury could infer such an unsupported conclusion. To the contrary, the facts of this case conclusively support the exact opposite deduction. Defendant MCI offered to Plaintiff the chance to obtain a graduate degree at a distinguished institution. Plaintiff accepted this offer, and Defendant MCI paid the costs of Plaintiff's tuition in addition to his regular salary. In spite of this generous situation, Plaintiff bitterly rejected his *temporarily* increased workload. He refused to go the extra mile for MCI even though MCI had gone the extra mile for him. He found no extra time to work, but often found extra time to complain about his increased workload. In short, Plaintiff squandered his considerable *opportunities* by failing to meet his obligations.

Rather than accepting his failure, however, Plaintiff filed a lawsuit, causing Defendant MCI additional fruitless expense. Like so many others in today's society, Plaintiff refused to acknowledge his own shortcomings and instead blamed the ills of society for his plight. His lawsuit demeans the struggle of those who truly suffer from the inequities of racism and sexism. It is those persons for whom these laws were written.

Accordingly, summary adjudication is appropriate with regard to these claims. Also, because Plaintiff as a matter of law cannot state claims for race or sex discrimination, or for retaliation, Plaintiff's claim for wrongful discharge in violation of public policy fails as well. *DeHorney*, 879 F.2d at 465.

## DEFAMATION CLAIM

In this case, Plaintiff has alleged that Defendants made false and malicious statements to third parties, defaming him in the

---

ed activity and the defendant's adverse employment action. *Cohen v. Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982). A plaintiff must then prove pretextual conduct in responding to a defendant's legitimate, articulate nondiscriminatory reason for the challenged action. Cal. Gov't Code § 12940(f); *Flait v. North Am. Watch Corp.*, 3 Cal.App.4th 467, 475–76, 4 Cal.Rptr.2d 522 (1992); 42 U.S.C. § 2000e–3(a); *Miller v. Fairchild Indus.*, 885 F.2d 498, 504 n. 4 (9th Cir. 1989).

8. Plaintiff claims that he did not know of the gravity of such a failure, and urges this Court to withdraw or amend the deemed admissions pursuant to Fed.R.Civ.P. 36(b). This Court DENIES Plaintiff's request. Defendants' requests for admissions stated clearly that "IF YOU FAIL TO SERVE A TIMELY RESPONSE TO ANY OF THESE REQUESTS FOR ADMISSIONS, YOU WILL ... SUBJECT YOURSELF TO A MOTION ... FOR AN ORDER THAT THE REQUEST(S) BE DEEMED ADMITTED AND FOR MONETARY SANCTIONS."

attempt "to prevent Plaintiff from being able to enjoy his constitutional rights to equal employment with MCI......" Complaint, ¶ 37. Once again, Plaintiff failed to respond in a timely manner to Defendants' request for an admission on this issue, and Plaintiff is hereby deemed to admit that he has no evidence supporting any defamation claim. Further, Plaintiff failed to oppose Defendants' motion with regard to the defamation claim. Finally, it is even unclear what the alleged defamatory statements might have been. Summary adjudication is appropriate.

### FRAUD AND DECEIT CLAIMS

■ The well-settled elements of fraud include: (1) a misrepresentation of fact; (2) made with knowledge of its falsity; (3) made with the intent to defraud; (4) with justifiable action taken in reliance upon the misrepresentation; and (5) resulting damages. *Magpali v. Farmers Group, Inc.*, 48 Cal. App.4th 471, 484, 55 Cal.Rptr.2d 225 (2nd Dist.1996).

Plaintiff failed to oppose Defendants' motion with respect to his claims of fraud and deceit. Further, Plaintiff in his deposition testimony indicated that he was aware that he was an at-will employee. For the most part, his conclusions that he could not have been fired or demoted without good cause are based on his own misdirected assumptions. Deposition of Andrew Jenkins, p. 730. Where representations might have been made, Plaintiff acknowledges that the persons making the statements "really believed in what they were saying." Deposition of Andrew Jenkins, p. 728. Therefore, Plaintiff cannot as a matter of law establish the element of intent necessary to support a claim of fraud. Summary adjudication is appropriate.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Defendants move for summary disposition on this claim on the following grounds: (1) Plaintiff's claim is preempted by the California Labor Code's worker's compensation provisions; (2) as a matter of law, Defendants'

conduct was not extreme or outrageous; and (3) Defendant Murphy's conduct is privileged. Plaintiff in his Opposition did not even address Defendants' arguments on the second and third arguments.

■ This Court agrees with Defendants' arguments. California's worker's compensation liability provisions, codified at Cal. Labor Code §§ 3600–3605, exclusively govern claims for intentional infliction of emotional distress arising from the workplace. *Livitsanos v. Superior Court,* 2 Cal.4th 744, 754, 7 Cal.Rptr.2d 808, 828 P.2d 1195 (1992). Therefore, Plaintiff's claim here is preempted.[9]

Also, Plaintiff has failed to establish that a genuine issue of material fact exists with respect to Defendants' conduct. To maintain a cause of action for intentional infliction of emotional distress, outrageous conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community" must be established. *Davidson v. City of Westminster,* 32 Cal.3d 197, 209, 185 Cal.Rptr. 252, 649 P.2d 894 (1982). Because Plaintiff has failed to establish sufficient facts to create a genuine dispute of material fact as to his claims of employment discrimination, he similarly cannot prove outrageous conduct. Further, Plaintiff's deemed admission that he has "no evidence" with respect to those issues dooms this claim as well. Summary adjudication is appropriate.

### TORT IN ESSENCE/TORT IN SE CLAIMS

This purported claim is based on Defendants' alleged violations of the FEHA. To this Court's knowledge, this is not a recognized theory for legal recovery. Further, it is cumulative and entirely derivative of Plaintiff's discrimination claims. Summary disposition is appropriate here as well.

### LOSS OF CONSORTIUM CLAIM

Plaintiff Gwendolyn Jenkins has also alleged a claim for loss of consortium. She, too, failed to respond in a timely manner to Defendants' request for admissions. There-

---

**9.** For the same reason, Plaintiff's claim of fraud and deceit is also preempted. *See Shoemaker v.*

*Myers,* 52 Cal.3d 1, 7, 276 Cal.Rptr. 303, 801 P.2d 1054 (1990).

fore, it is deemed that she admits to having no evidence of loss of consortium as a result of Defendants' conduct. Like her husband, Mrs. Jenkins's deemed admissions are fatal to her claim. Further, her claim is also derivative of Plaintiff's failed claims. Finally, her claim is preempted by state worker's compensation law. *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 162, 233 Cal. Rptr. 308, 729 P.2d 743 (1987).

### CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment is hereby GRANTED.[10]

**IT IS SO ORDERED.**

10. Plaintiffs "causes of action" for punitive damages, declaratory relief, and injunctive relief are not causes of action. They are remedies. Plaintiffs' counsel's error here, unfortunately, is all too common. These items are not claims for relief, they are the relief. Therefore, they need not be addressed by this Court.