[No. G013274. Fourth Dist., Div. Three. Aug. 31, 1994.]

FRANK GOMON, Plaintiff and Appellant, v.
TRW, INC., Defendant and Respondent.

**COUNSEL**

Gregory Sullivan for Plaintiff and Appellant.

Jones, Day, Reavis & Pogue, Daniel J. McLoon and Patricia W. Davies for Defendant and Respondent.

**OPINION**

**WALLIN, Acting P. J.**—Frank Gomon appeals from a summary judgment entered against him in his action against TRW, Inc. Although he raises a plethora of arguments, the primary issue is whether TRW impermissibly disclosed "a consumer report" or a "consumer credit report" on him, as those terms are defined in the Consumer Credit Reporting Agencies Act (Civ. Code, § 1785.1 et seq., hereafter CCRAA)[1] or the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq., hereafter FCRA). We hold TRW did not and, accordingly, affirm.

FACTS

TRW is a consumer credit reporting agency operating under the CCRAA and the FCRA. TRW provides access to credit information to creditors and other authorized users who are referred to as "subscribers."

---

[1]All statutory references are to the Civil Code unless otherwise specified.

Each time a subscriber accesses TRW's database, it is recorded in the consumer's credit file as an "inquiry." Most subscribers seek a full credit history. The information TRW provides in response to these inquiries is known as a "credit report." In other cases, authorized users receive only limited address and/or employment information, which is called an "IDV" inquiry. That is what happened here.

All consumers are entitled to receive a written disclosure from TRW of the information noted in their credit file. TRW's communication of such information is referred to as a "consumer file disclosure." If a subscriber seeks an entire credit history, the notation of that inquiry becomes part of the consumer's credit file and is disclosed to subsequent subscribers who make inquiries about that consumer. If an authorized user makes a limited IDV inquiry, that inquiry is also noted in the consumer's file.

A consumer who questions the accuracy or completeness of any item of information in his or her file may register a dispute with TRW. If the disputed information could affect the consumer's credit history and the dispute is neither frivolous nor irrelevant, TRW conducts an investigation. The consumer is advised of the results of the investigation and of rights with respect to the dispute process.

Credit Data, Inc. is a credit reporting agency which has a contractual relationship with TRW. Under the contract, it has access to TRW's database and is permitted to sell such access to subscribers. Credit Data certified that it will utilize TRW's database for "permissible purposes" only. It entered into a subscription contract with Super Bureau, Inc. and assigned it a subscriber number so it could access TRW's database. As part of the contract, Credit Data obtained the necessary "permissible purpose" certification from Super Bureau.

In August 1989, Super Bureau made an inquiry of Gomon's address and employment, and an IDV notation was made in his file. In October, Gomon requested a consumer file disclosure, which he received with a copy of a TRW brochure entitled, "Understanding TRW's Credit Reporting Service." TRW's notation of the IDV inquiry made by Super Bureau was listed on the disclosure. The IDV code was explained as meaning "address information for the government." Gomon declared this made him fearful since some government agency was apparently trying to locate him. He hand-delivered a letter to TRW's office, demanding the Super Bureau inquiry be deleted. Thereafter, he sent nine more letters.

On January 13, 1990, Gomon again demanded TRW investigate the IDV inquiry. He had contacted Super Bureau and discovered it had sold his credit

file information to Elite Investigations, a private investigation firm. Elite stated the request was made on behalf of its client, CNN Insurance Co., which was representing another corporation in a lawsuit with Gomon. Gomon claimed he was not a CNN customer and CNN had no right to receive information about him.

TRW's counsel informed Gomon that "under both Federal and California law, a consumer reporting agency is permitted to release credit information to anyone who has a 'permissible' purpose as defined under the law. There is no requirement that a consumer authorize the release of a credit file." Counsel also noted that Super Bureau "was acting as a consumer reporting agency in reselling the report. . . . I cannot comment upon whether or not Super Bureau had a permissible purpose in reselling the report." He suggested Gomon contact Super Bureau to determine what permissible purpose it had for releasing the report because any legal remedies were against Super Bureau.

On August 9, 1990, the IDV inquiry was deleted from Gomon's credit file. Nevertheless, on December 6, 1991, Gomon hand-delivered to TRW a "formal notice that I have appeared here in person at your offices for the purpose of exercising my rights under the applicable provisions of the . . . Civil Code, and you must begin by promptly advising me of my rights. . . ." Gomon said he had the right to inspect all files pertaining to him and demanded a decoded version of the file. He claimed a written file copy with an explanation of codes used would not be sufficient. Thereafter, TRW sent Gomon a written copy of his file with a TRW brochure explaining the codes used.

Gomon filed a complaint for damages against TRW and others,[2] alleging causes of action for: (1) permitting Super Bureau to make an inquiry without a permissible purpose for doing so; (2) refusing to investigate and remove the IDV inquiry by Super Bureau from his file; and (3) failing to advise him of his rights when he requested TRW provide him with a consumer file disclosure, to disclose all files on him, to provide him with a decoded version of the file, and to provide a trained representative to explain his consumer file disclosure. He added causes of action for intentional infliction of emotional distress, negligence, and conspiracy. TRW's motion for summary judgment was granted and this appeal followed.

---

[2]Gomon named 12 other individuals and entities as defendants, but none is a party here. He devotes 16 pages of his opening brief to a discussion of 23 cases he brought against various entities and individuals between 1980 and 1991, and argues we should overturn the lower court's finding that he is a vexatious litigant. However, TRW did not join the motion to declare Gomon vexatious, nor did the order apply to TRW. Therefore the validity of that order is beyond the scope of this appeal.

## Discussion

### A. *15 U.S.C. 1681b and Civil Code Section 1785.11*

■ Gomon claims TRW impermissibly released his credit report to Super Bureau. We disagree.[3]

Section 1785.11, subdivision (a)(3)[4] limits the circumstances under which a consumer credit report may be furnished. Thus, the issue is whether the information released to Super Bureau was a "consumer credit report" within the meaning of the statute. It was not.

Section 1785.3 defines "consumer credit report" as "any written, oral, or other communication of any information by a consumer credit reporting agency *bearing on a consumer's credit worthiness, credit standing, or credit capacity*, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing a consumer's eligibility for: (1) credit to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) hiring of a dwelling unit. . . ." (Italics added.)

It is undisputed that the information provided by TRW to Super Bureau was address or employment information requested by Elite Investigations, which turned it over to its client, CNN Insurance. There is no evidence the address or employment information furnished to Super Bureau had any bearing on Gomon's credit. Therefore, it was not a consumer credit report under the CCRAA.

---

[3]He also argues TRW violated section 1785.12 by providing address and/or employment information to a private party other than the government. This argument has no merit. Section 1785.12 states, "Notwithstanding the provisions of Section 1785.11, a consumer credit reporting agency may furnish to a governmental agency a consumer's name, address, former address, places of employment, or former places of employment." This section does not prohibit a credit reporting agency from supplying such information to private parties merely because it is permitted to supply the information to a governmental agency.

[4]That section provides in pertinent part; "(a) A consumer credit reporting agency shall only furnish a consumer credit report under the following circumstances: [¶] . . . . [¶] (4) To a person whom it has reason to believe: [¶] (A) Intends to use the information in connection with a credit transaction, or entering or enforcing an order of a court of competent jurisdiction for support, involving the consumer on whom the information is to be furnished, and involving the extension of credit to, or review or collection of an account of, the consumer; or [¶] (B) Intends to use the information for employment purposes; or [¶] (C) Intends to use the information in connection with the underwriting of insurance involving the consumer, the rate for such insurance, or for insurance claims settlements; or [¶] (D) Intends to use the information in connection with a determination of the consumer's eligibility for a license responsibility or status; or [¶] (E) Intends to use the information in connection with the hiring of a dwelling unit, as defined in subdivision (c) of Section 1940; or [¶] (F) Otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer."

Gomon also argues TRW violated the FCRA by providing a copy of his "consumer report" to Super Bureau. The analysis is the same as under the CCRAA.

Whether the FCRA is applicable depends on whether the address or employment information supplied by TRW is a "consumer report." 15 U.S.C. section 1681a(d) defines consumer report as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used . . . as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes. . . ."[5]

TRW supplied Super Bureau with Gomon's address and employment information which eventually found its way into the hands of CNN, apparently for use in yet another lawsuit brought by Gomon. The information did not bear on Gomon's credit or general character, nor was it used to establish his eligibility for credit, insurance, employment, government benefits or for a business transaction. Thus, the information was not a "consumer report" under the FCRA.

The limited information provided in an IDV inquiry is not a consumer credit report. As a result, we need not address Gomon's contention that TRW's release of that limited information to Super Bureau could have violated the credit reporting statutes. Nevertheless, Gomon argues certain inferences might be drawn from that information, for example whether the residence is perceived as being in an expensive or low class neighborhood, or whether the consumer held an executive position with a large corporation or was unemployed. Nothing in the record indicates the IDV report contained any information about the nature of Gomon's employment.[6]

The information disclosed in the IDV report did not include information relating to Gomon's credit worthiness, credit standing or credit capacity. In fact, Super Bureau informed Gomon it had received no credit information on him from TRW. As the district court noted in *Ley* v. *Boron Oil Co.* (W.D. Pa.) (1976) 419 F.Supp. 1240, a report such as that present here, even if

---

[5]Although it was amended effective July 1, 1993, the section preserved its focus on "any item of information."

[6]Gomon contends lenders, insurers, or property owners might make decisions on a consumer's loan application based solely upon where the applicant lives. There is no evidence that happened here. Moreover, any such decision would be contrary to existing "anti-redlining" laws. (See Health & Saf. Code, § 35810.)

dealing with "residence, marital status, age and absence of any criminal or civil court records," does not contain the type of information required of a consumer credit report. (*Id.* at p. 1243.)

Gomon relies on *Ippolito* v. *WNS, Inc.* (7th Cir. 1988) 864 F.2d 440 for the proposition ·that any information collected or provided for one of the permissible purposes in 15 U.S.C. section 1681b is automatically a consumer credit report, regardless of the nature of the information. However, as *Ippolito* noted, to be a consumer credit report the information must have "a bearing on the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." (*Id.* at p. 449.) Only when it is determined that a disclosure meets this special requirement does the analysis of enumerated permissible purposes in the statute become relevant.

Gomon also argues that because governmental agencies are permitted to receive identifying information about consumers from credit reporting agencies, the information necessarily is a consumer credit report. However, the purpose of 15 U.S.C. section 1681f and Civil Code section 1785.12 is to limit information available to the government. These provisions were enacted out of concern about whether the government should be allowed to use information in credit reporting agencies' files. As noted in *Application of Credit Info. Corp. of N.Y.* (S.D.N.Y. 1978) 457 F.Supp. 969, "Congress expressly stated its intention that consumers be protected from unwarranted invasions of their privacy by governmental administrative agencies. . . ." (*Id.* at p. 972, fn. 3.) However, simply because limitations on governmental agencies frequently restrict them to address or employment information does not compel the conclusion that the limited information is a consumer credit report as defined in 15 U.S.C. section 1681f and Civil Code section 1785.12.

A credit reporting agency fulfills its obligations if it obtains an advanced written certification that authorized users will access the credit reporting agency's database solely for permissible purposes. (See *Heimstra* v. *TRW, Inc.* (1987) 195 Cal.App.3d 1629, 1634 [241 Cal.Rptr. 564]; *Boothe* v. *TRW Credit Data* (S.D.N.Y. 1982) 557 F.Supp. 66, 71.) In *Hiemstra*, the Court of Appeal held that TRW's practice of requiring a subscriber "to certify the purpose for reports in advance, and thereafter retaining, on file, a copy of the one-time general certification, meets the burden of proving that it had reasonable grounds for believing the [credit] report would be used for proper purposes." The court stated the rationale for its holding: " 'Given the high volume of credit requests that TRW must respond to each day, and the importance of a speedy response, the court concludes that it would be impractical to require TRW to verify the purpose for each credit report. By

requiring its subscribers to certify the purpose for reports in advance, TRW reasonably strikes a balance between the conflicting goals protecting the privacy rights of consumers and promoting an efficient credit economy. . . .'" (*Heimstra* v. *TRW, Inc., supra,* 195 Cal.App.3d at p. 1633, quoting *Boothe* v. *TRW Credit Data, supra,* 557 F.Supp. at p. 71.) So it is here. Indeed, Gomon conceded in his opposition to the motion for summary judgment that TRW met its obligations to comply with the "permissible purposes" limitation of section 1785.14, subdivision (a). As Gomon then put it, and as remains applicable now, "plaintiff includes causes of action for violation of §§ 1785.11 and 1785.14(a) against the other defendants, *and will concede that these causes of action cannot be maintained against TRW based upon the argument presented by TRW.*" (Italics added.)

Since an essential element of the cause of action under each statute is lacking, the summary judgment motion was properly granted.

### B.   *Civil Code Section 1785.16*

▮▮▮   Gomon also claims TRW violated section 1785.16 by refusing to investigate and remove the IDV inquiry from his file. At the time the summary judgment motion was heard, that section read: "If the completeness or accuracy of any *item of information* . . . is disputed by a consumer, and such dispute is conveyed directly to the consumer credit reporting agency by the consumer . . . , the consumer credit reporting agency shall within a reasonable period of time reinvestigate and record the current status of the disputed information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. If the consumer credit reporting agency determines that the dispute is frivolous or irrelevant, it shall notify the consumer in writing within five days after such determination is made that it will not reinvestigate the item of information." (Italics added.)[7]

Under section 1785.3, an item of information is "any one or more informative entries in a credit report which causes a creditor to deny credit to an applicant or increase the cost of credit to an applicant or deny an applicant a checking account with a bank or other financial institution." An IDV inquiry

---

[7]Gomon argues there are triable issues of material fact as to whether an IDV inquiry seeks only address and/or employment information or address information for the government, and whether the IDV inquiry appears on the consumer's credit report or only on the consumer's file disclosure. Gomon is mistaken. Even if the IDV inquiry (whether it stands for "address information for the government" or "limited address and/or employment information") is seen by others seeking Gomon's credit report, it does not affect his ability to qualify for credit. Therefore, Gomon's argument that a continuance should have been granted so he could conduct further discovery is rendered moot. (Code Civ. Proc., § 437c, subd. (h).)

is not an item of information since it is only noted as an address or employment inquiry in the consumer's credit file and would in no way affect the ability to obtain credit or a checking account. TRW had no duty to investigate Gomon's complaint.[8]

Gomon also argues TRW had a duty to notify him that his dispute was frivolous and it would not investigate. Not so. Under section 1785.16, notification is not required unless the consumer is disputing an "item of information."

### C. *Sections 1785.10 and 1785.15*

■ TRW provided Gomon with a written copy of his file and a brochure explaining the codes used. Gomon argues that by doing so, TRW violated sections 1785.10 and 1785.15 since he was not provided the file disclosure in the manner he requested. He also alleges TRW's brochure does not comply with section 1785.10 because it fails to inform consumers of certain statutory rights. Neither claim has merit.

Section 1785.10, subdivision (b) provides: "Every consumer reporting agency, upon contact by a consumer by phone, mail, or in person regarding information which may be contained in the agency files regarding that consumer, shall promptly advise the consumer of his or her rights . . . and of the obligation of the agency to provide disclosure of the files in person, by mail, or by telephone . . . , including the obligation of the agency to provide a decoded written version of the file or a written copy of the file with an explanation of any code used, if the consumer so requests. . . . The disclosure shall be provided in the manner selected by the consumer."

Section 1785.15, subdivision (a) states in pertinent part, "the consumer has the right to request and receive a decoded written version of the file or a written copy of the file with an explanation of any code used, without charge. . . ."

In 1980, section 1785.10 was amended to require consumers be given written disclosures of their credit report and to ensure they are advised of this right. Prior to the amendment, credit reporting agencies were only

---

[8]Gomon also argues that even if the IDV report disclosed by TRW was not an "item of information" or a "consumer credit report," there are criminal provisions in the FCRA which permit civil liability for obtaining information under false pretenses. That is true. However, the cases Gomon relies on dealt with situations where a *user* of credit information obtained information under false pretenses. (See e.g., *Zamora* v. *Valley Fed. Sav. & Loan Assn.* (10th Cir. 1987) 811 F.2d 1368, 1370-1371; *Kennedy* v. *Border City Sav. & Loan Assn.* (6th Cir. 1984) 747 F.2d 367, 369.) There are no such facts here.

required to permit consumers to visually inspect their files. The amendment provided the term "written disclosure" would not be defined because "various credit reporting agencies have different record-keeping systems with different costs for reproducing information." Thus, an agency could interpret "written disclosure" as it chose. Though in its final form as amended, section 1785.10 required agencies to provide consumers with either a decoded written version of the file or a written copy of the file with an explanation of any code used, these alternatives appear to be. given to account for the differences in the record-keeping procedures of the various credit reporting agencies.

The duty of a consumer credit reporting agency to provide disclosure in the "manner selected by the consumer" applies to the manner in which the agency provides disclosure of the files, i.e., in person, by mail or by telephone.[9] By supplying Gomon with a copy, TRW complied with the statute.

### D.   *The Remaining Causes of Action*

Finally, Gomon argues the court erred by granting summary judgment on his remaining causes of action for intentional infliction of emotional distress, negligence, and conspiracy. Not so.

To prevail on his claim of intentional infliction of emotional distress, Gomon must show "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

Extreme and outrageous conduct is that which goes beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community. (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 209-210 [185 Cal.Rptr. 252, 649 P.2d 894].) Insults, indignities, annoyances, petty oppressions or other trivialities will not suffice. The conduct must be such that it would cause an average member of the community to immediately react in outrage. (BAJI No. 12.74.)   TRW's conduct did not even approach this standard. Its alleged acts of releasing Gomon's address and employment information to Super Bureau, allegedly failing to

---

[9]This is consistent with the definition of "manner" as a "way, mode, method of doing anything, or mode of proceeding in any case or situation." (Black's Law Dict. (5th ed. 1979) p. 868, col. 1.)

investigate and remove the IDV inquiry from his file, and providing him with a written copy of his credit file with explanations of all codes instead of the decoded written version he requested, even if proved true, are not sufficient. An average member of the community would not "immediately react in outrage" to such conduct.

Although Gomon concedes an action for negligence will not lie for violations of sections 1785.10 and 1785.15, he contends the court erred in granting summary judgment on that cause of action because TRW failed to provide him with a decoded written version of his file. But Gomon has failed to establish an essential element of negligence: that TRW owed him a duty. As we have already held, section 1785.16 did not create an obligation to give him his choice of what type of disclosure he might receive. As a result, summary judgment was proper.[10]

### E. *Attorney Fees*

■ Finally, Gomon contends the court erred in awarding attorney fees to TRW. Although the CCRAA allows the prevailing party, whether it be the plaintiff or defendant, to be awarded attorney fees, the FCRA does not provide for an award of fees to a prevailing defendant; therefore, Gomon argues, the FCRA preempts the CCRAA.

Under the supremacy clause of the United States Constitution, if state law is in direct conflict with federal law such that compliance with both is impossible, or the state law is an obstacle to the accomplishment of the full purposes and objectives of Congress, the state law is preempted. (*Silkwood* v. *Kerr-McGee Corp.* (1984) 464 U.S. 238, 257 [78 L.Ed.2d 443, 458, 104 S.Ct. 615, 621]; 7 Witkin (9th ed. 1988) Summary of Constitutional Law, § 7, p. 49.)

However, the CCRAA does not conflict with the FCRA, nor is it an obstacle to its purposes and objectives. A plaintiff is not precluded by the

---

[10]For the first time on appeal, Gomon argues Super Bureau lacked a permissible purpose for its IDV inquiry, and, therefore, TRW may be held vicariously liable for Super Bureau's conduct under a common law agency theory. First, the facts belie this argument. There was no agency relationship between TRW and Super Bureau. If anything, TRW might be deemed to have such a relationship with Credit Data, which itself had a separate subscriber relationship with Super Bureau. In any event, having failed to raise this argument in the trial court, Gomon may not raise it for the first time here. (See *American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 [241 Cal.Rptr. 466].) "An argument or theory will generally not be considered if it is raised for the first time on appeal. [Citation.] Specifically, in reviewing a summary judgement, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.] Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal." (*Ibid.*; see also *Estate of Coate* (1979) 98 Cal.App.3d 982, 987 [159 Cal.Rptr. 794]; *National Indemnity Co.* v. *Manley* (1975) 53 Cal.App.3d 126, 133-134 [125 Cal.Rptr. 513].)

CCRAA from bringing suit under the FCRA. A consumer may sue under the FCRA and avoid the risk of having to pay the defendant's attorney fees if he or she does not prevail. The trial court did not err in awarding attorney fees to TRW.

The judgment is affirmed. TRW shall recover its costs on appeal.

Sonenshine, J., and Crosby, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 22, 1994.