Filed 12/22/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| R. KEMP, | |
| Petitioner, | |
| v. | G061122 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. 30-2021-01188280) |
| Respondent; | O P I N I O N |
| ACCURATE BACKGROUND LLC, | |
| Real Party in Interest. | |
| ACCURATE BACKGROUND LLC, | |
| Petitioner, | |
| v. | G061124 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. 30-2021-01188280) |
| Respondent; | |
| R. KEMP, | |
| Real Party in Interest. | |

Original proceedings; petitions for writs of mandate/prohibition to challenge orders of the Superior Court of Orange County, James J. Di Cesare, Judge.

Petitioner's writ in case No. G061122 is granted. Petitioner's writ in case No. G061124 is denied.

Outten & Golden, Jahan C. Sagafi, Ossai Miazad, Christopher M. McNerney, Julio Sharp Wasserman and Molly J. Fransden for Petitioner and Real Party in Interest.

Troutman Pepper Hamilton Sanders, Ronald I. Raether, Jr., Elizabeth Holt Andrews and Jessica R. Lohr for Petitioner and Real Party in Interest.

No appearance by Respondent.

\*　　\*　　\*

Under the federal Fair Credit Reporting Act (FCRA), a regulated agency may report a person's prior conviction to a prospective employer no matter how long ago it occurred. (15 U.S.C. § 1681c(a)(5).) Conversely, under the California Investigative Consumer Reporting Agencies Act (ICRAA) and the California Consumer Credit Reporting Agencies Act (CCRAA), an agency is prohibited from reporting a "conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years."[1] (Civ. Code, §§ 1785.13, subd. (a)(6), 1786.18, subd. (a)(7).)[2]

Generally, a state legislature can "offer greater protection to the consumer" than Congress. (See *Cisneros v. U.D. Registry, Inc*. (1995) 39 Cal.App.4th 548, 577.)

In 2011, plaintiff R. Kemp was convicted, released from prison, and placed on parole. In 2020, Amazon.com, Inc. (Amazon) offered Kemp a job in Sacramento. Defendant Accurate Background LLC (Accurate) provided a background report to Amazon revealing Kemp's criminal conviction. Amazon then withdrew its job offer.

---

[1] The word "antedate" is synonymous with the word *predate*. (See Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 52, col. 1 ["antedate" means "preceded in time"].)

[2] Further undesignated statutory references are to the Civil Code; when referring to its statutory subparts, we will also omit the word "subdivision" or its abbreviation.

2

Because Kemp's 2011 conviction predated the 2020 report by more than seven years, he filed a complaint alleging Accurate: 1) violated the ICRAA, 2) violated the CCRAA, and 3) derivatively violated the state's Unfair Competition Law (UCL).

Accurate filed a demurrer. Kemp's parole ended in 2014, which predated the 2020 report by less than seven years. Accurate argued under the ICRAA and the CCRAA, "the term 'parole' refers to the end of the parole period," thus barring liability. Alternatively, Accurate argued the federal FCRA preempts the state ICRAA, and therefore Kemp's ICRAA claim is barred as a matter of law.

The trial court overruled Accurate's demurrer, in part, finding "the plain meaning of 'from the date of . . . parole' refers to the start date of conditional release." The court sustained Accurate's demurrer, in part, finding "the FCRA preempts the ICRAA claim." Accurate and Kemp both filed petitions for extraordinary writ relief in this court. We issued orders to show cause.[3]

We hold the phrase *from the date of parole* refers to the start date of parole, and the FCRA does not preempt Kemp's ICRAA claim. Thus, we direct the trial court to vacate its prior order, which partially sustained Accurate's demurrer, and to issue a new order overruling the demurrer in its entirety.


I

FACTS AND PROCEDURAL HISTORY

At some point in 2011, Kemp was convicted of a crime and went to prison (no further details are in the record). In December 2011, Kemp was released from prison and was placed on parole. In December 2014, Kemp's parole ended.

In March 2020, Amazon offered Kemp a job in Sacramento, pending a background check. The following month, Accurate provided Amazon with a report,

---

[3] On the court's own motion and for good cause, the writ petitions in case No. G061122 and case No. G01124 are now consolidated for decision and all relevant purposes.

3

which included information about Kemp's 2011 conviction. Due to Kemp's 2011 criminal conviction, Amazon withdrew its offer of employment.

In July 2021, Kemp filed an amended class action complaint against Accurate stating three causes of action: 1) a violation of the ICRAA, 2) a violation of the CCRAA, and 3) a derivative violation of the UCL.

In August 2021, Accurate filed a demurrer. Accurate argued the ICRAA and CCRAA claims were barred because Kemp's parole ended in 2014, which predated the report by less than seven years. Alternatively, Accurate argued the federal FCRA preempted Kemp's state ICRAA claim (Accurate did not argue the CCRAA claim was preempted). Accurate also argued the UCL claim was barred as it was derivative of the ICRAA and CCRAA claims.

In December 2021, the trial court overruled Accurate's demurrer as to the parole issue but sustained it as to the preemption issue (the ICRAA claim).


II

DISCUSSION

In its demurrer, Accurate argued: (1) the phrase *from the date of parole* refers to the end of parole, and (2) the federal FCRA preempts the state ICRAA. We disagree. These are pure legal issues involving statutory interpretation, so our review is de novo. (See *Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857.)

When interpreting a statute, a court's role "is to determine the Legislature's intent so as to effectuate the law's purpose." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "We begin as always with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the

4

legislative history of the measure and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.'"  (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837-838.)

In this discussion, we will:  A) review the statutory framework of the three relevant acts; B) analyze the phrase *from the date of parole* as used in the ICRAA and the CCRAA; and C) analyze whether the federal FCRA preempts the state ICRAA.

*A.  Statutory Framework*

"In 1970, the Legislature enacted CCRAA.  [Citation.]  The act governed 'credit rating reports' that included consumer credit record and standing reports.  That same year, Congress passed the [FCRA].  [Citation.]  FCRA defined a 'consumer report' to include an individual's 'credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.'  [Citation.]  FCRA distinguished between consumer reports that contained information obtained by personal interviews, and consumer reports that were gathered by other means."  (*Connor v. First Student, Inc.* (2018) 5 Cal.5th 1026, 1032 (*Connor*).)

"In 1975, our Legislature repealed the 1970 CCRAA and enacted ICRAA [citation] and CCRAA [citation] to govern consumer background reports, including checks conducted for employment purposes.  The statutes were modeled after FCRA and were intended to serve complementary, but not identical, goals.  Both ICRAA and CCRAA had similar purposes.  They were enacted to ensure that consumer reporting agencies 'exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.'"  (*Connor*, *supra*, 5 Cal.5th at p. 1032.)

"As originally enacted, ICRAA applied to consumer reports that included character information obtained only through personal interviews."  (*Connor*, *supra*, 5 Cal.5th at p. 1032.)  In 1998, "our Legislature amended ICRAA to eliminate the

5

personal interview limitation and expand the statute's scope to include character information . . . 'obtained through any means.'" (*Id.* at pp. 1033-1034, fn. omitted.)

Under the ICRAA, an investigative consumer report is a report bearing "on a consumer's character, general reputation, personal characteristics, or mode of living." (§ 1786.2 (c).) Under the CCRAA, a consumer credit report is a report "bearing on a consumer's credit worthiness, credit standing, or credit capacity." (§ 1785.3 (c).) Under the FCRA, there is no distinction made between the two types of reports; a consumer report is simply referred to as a "'consumer report.'" (15 U.S.C. § 1681a(d).)

Because a consumer's character and credit information often overlap, the ICRAA and the CCRAA may apply to the same report. (See *Connor*, *supra*, 5 Cal.5th at p. 1036 ["a regulated party is expected to know and follow the requirements of both statutes"].) Both the ICRAA and the CCRAA allow California consumers to pursue a civil cause of action against a regulated agency or a user of a report that either willfully or negligently violates its provisions. (§§ 1785.31 et seq., 1786.50 (a).)

A conviction touches on a person's character and credit worthiness, so such information is subject to regulation under both state statutes. (See *Connor*, *supra*, 5 Cal.5th at p. 1031.) Under the ICRAA and the CCRAA, agencies are prohibited from reporting: "Records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, *from the date of* disposition, release, or *parole*, antedate the report by more than seven years." (§§ 1785.13 (a)(6), 1786.18 (a)(7), italics added.)

## B. *From The Date of Parole*

Accurate argues the phrase *from the date of parole* as used in the ICRAA and the CCRAA really means: from the date of *the end of* parole. We disagree.

"'Parole is the conditional release of a prisoner who has already served part of his or her state prison sentence. Once released from confinement, a prisoner on parole . . . is constructively a prisoner in the legal custody of state prison authorities until

6

officially discharged from parole.'" (*In re Taylor* (2015) 60 Cal.4th 1019, 1037.) Unless waived by the California Department of Corrections and Rehabilitation (CDCR), after an inmate serves a determinate term (e.g., four years) or an indeterminate term (e.g., 15 years to life), the inmate is then subject to a period of supervised release (parole or community supervision). (Pen. Code, §§ 3000, subd. (a)(1), 3451, subd. (a).)

Through "effective supervision . . . and surveillance of parolees, including the judicious use of revocation actions," the goal of parole is "to provide educational, vocational, family, and personal counseling necessary to assist parolees in the transition between imprisonment and discharge." (Pen. Code, § 3000, subd. (a)(1).) For most inmates, the parole period is three years, but for inmates convicted of more serious offenses, parole may last 10 years or more. (Pen. Code, § 3000, subd. (b).)

Generally, for an inmate serving a determinate term, "the Board of Prison Terms shall establish the prisoner's *parole date*, subject to [credit for good behavior], on the date calculated" for the chosen term (low, middle, or upper), plus any sentence enhancements. (Pen. Code, § 1170.2, subd. (b), italics added.) And generally, for an inmate serving an indeterminate term, "the Board of Parole Hearings shall meet with each inmate during the sixth year before the inmate's minimum eligible *parole date* for the purposes of reviewing and documenting the inmate's activities and conduct pertinent to parole eligibility." (Pen. Code, § 3041, subd. (a)(1), italics added.)

Under the ICRAA, an investigative reporting agency is prohibited from providing certain items of information in a person's background report, including: "Records of arrest, indictment, information, misdemeanor complaint, *or conviction of a crime that, from the date of disposition, release, or parole*, antedate the report by more than seven years. These items of information shall no longer be reported if at any time it is learned that, in the case of a conviction, a full pardon has been granted or, in the case of an arrest, indictment, information, or misdemeanor complaint, a conviction did not result; except that records of arrest, indictment, information, or misdemeanor complaints

may be reported pending pronouncement of judgment on the particular subject matter of those records." (§ 1786.18 (a)(7), italics added.)

Under the CCRAA, a credit reporting agency is similarly prohibited from providing certain items of information in a person's consumer credit report, including: "Records of arrest, indictment, information, misdemeanor complaint, *or conviction of a crime that, from the date of disposition, release, or parole*, antedate the report by more than seven years. These items of information shall no longer be reported if at any time it is learned that in the case of a conviction a full pardon has been granted, or in the case of an arrest, indictment, information, or misdemeanor complaint a conviction did not result." (§ 1785.13 (a)(6), italics added.)

Under California law, the word "parole" is consistent with its plain meaning: "Release from jail, prison, or other confinement after actually serving part of sentence." (Black's Law Dict. (6th ed. 1990) p. 1116, col. 2.) More specifically, the phrase *date of parole* is indistinguishable from the phrase *parole date*, which is well understood in California law to refer to the date of an inmate's release, or the start date of his or her parole. (See, e.g., CDCR, Operations Manual (2021) ch. 7, art. 16, § 74030.10, p. 645, italics added ["If an inmate is found suitable for parole, a tentative *parole date* shall be set"]; see also Pen. Code, §§ 3041, subd. (a)(1), 1170.2, subd. (b).)

In short, since a period of parole generally begins when an inmate is released from prison, we find the relevant provisions in the ICRAA and the CCRAA, which prohibit an agency from reporting a person's criminal conviction that predates a report by more than seven years as measured "from the date of . . . parole" plainly refers to the start date of that parole. (See §§ 1785.13 (a)(6), 1786.18 (a)(7).)

Consistent with our plain meaning interpretation is guidance from the Federal Trade Commission (FTC), which implements the FCRA. The seven-year limitation period as to the reporting of criminal convictions in California's ICRAA and CCRAA, is nearly identical to a prior provision of the federal FCRA that existed from

8

1970 until 1998. Under that provision, relevant reporting agencies were prohibited from reporting: "Records of arrest, indictment, or conviction of a crime which, from date of disposition, release, or parole, antedate the report by more than seven years."

In May 1990, the FTC interpreted the former seven-year limitation period, stating: "Computation of Time Period [¶] The seven year reporting period runs from the date of disposition, release or parole, as applicable. . . . If the consumer is convicted of a crime and sentenced to confinement, *the date of release or placement on parole controls*." (Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 55 Fed.Reg. 18804 (May 4, 1990), italics added.)

Here, Kemp's conviction (i.e., disposition), release from prison, and *placement on parole*, all occurred in 2011, which predated Accurate's 2020 report by more than seven years. Thus, we hold that the trial court properly denied Accurate's demurrer to Kemp's amended complaint on this basis.

Accurate argues the phrase *from the date of parole* as used in the ICRAA and the CCRAA really means: from the date of *the end of* parole. But contrary to our plain meaning interpretation, Accurate's imaginative interpretation would effectively require us to rewrite both the ICRAA and the CCRAA. This, of course, we cannot do. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 [courts "may not rewrite the statute to conform to an assumed intention that does not appear in its language"].)

Indeed, Accurate cites no legal authorities directly in support of its notion that the phrase *from the date of parole* actually means *from the date of the end of parole*. Rather, Accurate primarily relies on a canon of statutory construction known as the canon against surplusage: "In construing a statute we are required to give independent meaning and significance to each word, phrase, and sentence in a statute and to avoid an interpretation that makes any part of a statute meaningless." (*San Diego Police Officers Assn. v. City of San Diego Civil Service Com.* (2002) 104 Cal.App.4th 275, 284.)

Again, under the ICRAA and the CCRAA, regulated reporting agencies are

9

prohibited from including in a report: "Records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, *release, or parole*, antedate the report by more than seven years." (§§ 1785.13 (a)(6), 1786.18 (a)(7), italics added.) Accurate argues: "Given that parole begins immediately after release, it would be surplusage for the legislature to have included two terms in the statutes that were meant to refer to the same point in time. The trial court's reading of the statutory language renders either the word 'release' or the word 'parole' superfluous." We reject Accurate's argument for the following three reasons.

First, the relevant provisions of the ICRAA and the CCRAA are clear and unambiguous, so there is no need for us to rely on the canon against surplusage (or any other canon of statutory construction). (See *Butts v. Board of Trustees of California State University* (2014) 225 Cal.App.4th 825, 838 ["If the plain language of a statute or regulation is clear and unambiguous, our task is at an end and there is no need to resort to the canons of construction"].)

Second, although courts interpret a statute "so as to eliminate surplusage, there is no rule of construction requiring us to assume that the Legislature has used the most economical means of expression in drafting a statute." (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 772-773; § 3537 ["Superfluity does not vitiate"].) Moreover, when an inmate is released on parole, he or she is still in constructive custody. Therefore, it is reasonable to presume that by using the words release *and* parole, the Legislature intended to clarify that the prohibition against the reporting of a conviction that predates a report by more than seven years is to be measured from the inmate's *release from physical custody*, even though a period of parole—or *constructive custody*—may follow.

Third, the date of a prisoner's release from actual custody and the start date of prisoner's parole may not always refer to the same point in time. For instance, when a parolee commits a minor parole violation, the parolee may be committed to a county jail

10

for a brief period of confinement. (See Pen. Code, § 3000.08, subd. (f) ["Flash incarceration"].) In these cases, the seven-year limitation provided for in the ICRAA and CCRAA would likely be measured from the parolee's *last* release from physical confinement, which would be different from the *start* date of parole. (See Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 55 Fed.Reg. 18804, *supra*, ["Confinement, whether continuing or resulting from revocation of parole, may be reported until seven years after the confinement is terminated"].)

Accurate also disputes the persuasive value of the FTC's 1990 interpretation, which advised "the date of . . . *placement on parole* controls." (Italics added.) While Accurate acknowledges the accuracy of the quote, Accurate argues: "This federal guidance, however, dates to 1990 and was expressly rescinded . . . . As a result, it is neither controlling nor informative." (Footnote omitted.) Again, we disagree.

While we recognize that the FTC's guidance is neither current nor controlling, we do find it to be informative. (See, e.g., *Evon v. Law Offices of Sidney Mickell* (9th Cir. 2012) 688 F.3d 1015, 1026 ["Although not dispositive, the FTC's Commentary is illustrative of the types of permissible and impermissible conduct"]; *Beggs v. Rossi* (2d Cir. 1998) 145 F.3d 511, 512 ["Although . . . FTC policy statements are not entitled to conclusive weight in the courts, we accord them 'due weight'"].)

To reiterate and conclude, we hold the phrase "from the date of . . . parole" as used in the ICRAA and the CCRAA refers to the start date of parole. (See §§ 1785.13 (a)(6), 1786.18 (a)(7).) Thus, we find the trial court properly denied Accurate's demurrer on this basis and we now turn to the issue of federal preemption.

## C. Federal Preemption

Accurate argues the federal FCRA preempts the state ICRAA; therefore, Kemp's ICRAA claim is barred as a matter of law. We disagree.

In this part of the discussion, we will: 1) review general principles of law

11

concerning federal preemption; 2) review the relevant provisions of the federal FCRA; and 3) analyze the federal FCRA as applied to the state ICRAA.

### 1. General Principles of Law – Federal Preemption

The Supremacy Clause of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . ." (U.S. Const. art. VI, cl. 2.)

"The United States Supreme Court has recognized three types of preemption under the supremacy clause: express preemption, conflict preemption, and field preemption." (*People v. Burlington Northern Santa Fe Railroad* (2012) 209 Cal.App.4th 1513, 1521.) "First, express preemption arises when Congress 'define[s] explicitly the extent to which its enactments pre-empt state law.'" (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 936 (*Viva!*).) Second, conflict preemption arises when "'compliance with both state and federal law is impossible,' or where 'the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."'" (*Oneok, Inc. v. Learjet, Inc.* (2015) 575 U.S. 373, 377.) "Finally, field preemption . . . applies 'where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.'" (*Viva!,* at p. 936.)

Accurate primarily relies on a theory of express preemption. "When express preemption is claimed, the court's 'task is to "identify the domain expressly pre-empted." [Citation.] To do so, we focus first on the statutory language, "which necessarily contains the best evidence of Congress' pre-emptive intent."'" (*Friends of the Eel River v. North Coast Railroad Authority* (2017) 3 Cal.5th 677, 704.) "Indeed, in all preemption cases, whether express or implied preemption is claimed, the fundamental

12

question regarding the scope of preemption is one of congressional intent." (*Ibid*.)

"'If a statute "contains an express pre-emption clause, our 'task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'""" (*People ex rel. Harris v. Delta Air Lines, Inc*. (2016) 247 Cal.App.4th 884, 895.) "There is also a second rule that may be relevant to an analysis in preemption cases, namely, """"the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."""" (*Ibid*.) "This is known as the presumption against preemption . . . ." (*Ibid*.)

### 2. *The Relevant Provisions of the FCRA*

"Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." (15 U.S.C. § 1681(a)(3).) Therefore, the purposes and objectives of the FCRA are "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer." (15 U.S.C. § 1681(b).)

Section 1681c of the FCRA addresses: "Requirements relating to information contained in consumer reports." (15 U.S.C. § 1681c, boldfacing & underlining omitted.) This section delineates data that *must be excluded* from consumer reports (e.g., "records of arrest that, from date of entry, antedate the report by more than seven years"), data that *may be included* in reports (e.g., "records of convictions of crimes" no matter when they occurred), and data that *must be disclosed* in consumer reports (e.g., disputes filed by consumers). (See 15 U.S.C. § 1681c(a)(1)-(8), (d) & (f).)

Section 1681t addresses the FCRA's: "Relation to State Laws." (15 U.S.C. § 1681t.) "*Except as provided in subsections (b) and (c)*, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from

13

complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."[4]  (15 U.S.C. § 1681t(a), italics added.)

The FCRA express preemption clause at issue is located in section 1681t, subdivision (b).[5]  The clause provides, in relevant part:  "No *requirement or prohibition* may be imposed under the laws of any State--  [¶]  . . . with respect to any *subject matter* regulated under--  [¶]  . . . section 1681c of this title, relating to information contained in consumer reports, *except that this subparagraph shall not apply to any State law in effect on September 30, 1996*."  (15 U.S.C. § 1681t(b)(1)(E), italics added.)

Therefore, as stated by a federal district court, there is a two-prong test under section 1681t (b)(1)(E), of title 15 of the United States Code, for the express preemption of a state law:  the "FCRA preempts state consumer reporting statutes when (1) the subject matter of the state statute concerns matters regulated under 15 U.S.C. § 1681c ["Requirements related to information contained in consumer reports"]; and (2) the state law took effect after September 30, 1996."  (*Simon v. Directv, Inc.* (D. Colo. Mar. 19, 2010, No. 09-CV-00852-PAB-KLM) 2010 WL 1452853, at p. *3.)

*3. Analysis and Application*

To be clear, the relatively narrow issue we are analyzing in this part of the opinion is whether a "requirement or prohibition" within the state ICRAA is preempted

---

[4] The word "subchapter" refers to "subchapter III of chapter 41 of Title 15, containing the entirety of the FCRA."  (*Kirtz v. Trans Union LLC* (3d Cir. 2022) 46 F.4th 159, 165.)

[5] Subdivision (c) is not at issue in this case; it provides that the FRCA's definition of a "'firm offer of credit or insurance' (or any equivalent term) . . . shall be construed to apply" as to "the laws of any State governing consumer reports."  (15 U.S.C. § 1681t(c).)

14

by the federal FCRA.[6]  (See 15 U.S.C. § 1681t(b)(1)(E).)  The ICRAA prohibition at issue here makes it a violation of law for an investigative agency to include in a report: "Records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years."  (§ 1786.18 (a)(7).)  This state law prohibition under the ICRAA has been in effect since 1975, with only minor grammatical changes in 1998.

Applying the first prong of the test for express federal preemption, the state consumer reporting statute at issue in this case plainly concerns the same subject matter as the federal law.  That is, the challenged prohibition in the ICRAA (§ 1786.18 (a)(7)), regulates the disclosure of convictions in consumer reports, which is also regulated (though allowed) within section 1681c of the FCRA (15 U.S.C. § 1681c(a)(5)).

However, applying the second prong of the test for federal preemption, the state law at issue (the prohibition against the reporting of a conviction that predates a report by more than seven years), has been a part of the ICRAA since 1975 and was in effect on September 30, 1996.  That is, section 1786.18 (a)(7) did not take "effect after September 30, 1996."  (See *Simon v. Directv, Inc.*, *supra*, 2010 WL 1452853, at p. *3.)

In short, Kemp's ICRAA claim, which alleges Accurate violated the prohibition against the reporting of a conviction that predates a report by more than seven years, is not preempted by the FCRA because the ICRAA prohibition—section 1786.18 (a)(7)—was "in effect on September 30, 1996."  (See 15 U.S.C. § 1681t(b)(1)(E).)

Thus, we direct the trial court to vacate its prior order, which partially granted Accurate's demurrer (as to Kemp's ICRAA cause of action) and direct the trial court to now overrule Accurate's demurrer in its entirety.

When ruling on Accurate's demurrer, the trial court agreed the ICRAA's prohibition against the reporting of criminal convictions in section 1786.18 (a)(7)

---

[6] Accurate did not argue in the trial court, nor does it argue in this court, that Kemp's CCRAA claim is preempted by the FCRA.

concerns the same subject matter as the FCRA and was in effect on September 30, 1996. The court further acknowledged there is an exception to the federal preemption clause within the FCRA for a "State law in effect as of September 30, 1996." (See 15 U.S.C. § 1681t(b)(1)(E).) Nonetheless, the court ruled: "The 1998 amendments made the report at issue actionable under the ICRAA. As the amendments post-date the FCRA's exception for pre-existing law, preemption applies." We disagree.

As discussed, the Legislature made minor grammatical changes in 1998 to section 1786.18 (a)(7), but the Legislature did not change the statutory prohibition against the reporting of a conviction that predates a report by more than seven years. In 1998, the Legislature also "amended ICRAA to eliminate the personal interview limitation and expand[ed] the statute's scope to include character information . . . 'obtained through any means.'" (*Connor*, *supra*, 5 Cal.5th at pp. 1033-1034.) The ICRAA now provides (in a different section from the limitation on the reporting of criminal convictions): "The term 'investigative consumer report' means a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living *is obtained through any means*." (§ 1786.2 (c), italics added.)

Assuming the Legislature's 1998 amendments to the ICRAA made Accurate's 2020 report actionable (because the information about Kemp's 2011 criminal conviction presumably was not gathered through personal interviews), that fact is not relevant to our express preemption analysis. This is because the relevant preemption clause in the FCRA only preempts a "*requirement or prohibition* . . . imposed under the laws of any State" with a carve-out for any state laws "in effect on September 30, 1996." (15 U.S.C. § 1681t(b)(1)(E), italics added.) Although the Legislature's 1998 amendment changed the definition of a "investigative consumer report" within the ICRAA, and arguably permitted Kemp to bring the instant cause of action, the creation of a private cause of action is not a *requirement* or a *prohibition* imposed under California law.

"A requirement is a rule of law that must be obeyed . . . ." (*Bates v. Dow*

16

*Agrosciences LLC* (2005) 544 U.S. 431, 445.) A "prohibition" is defined as: "An act or law prohibiting something . . . ." (Black's Law Dictionary (6th ed. 1990) p. 1212, col. 1.) "In contrast, under California law, a remedy creates no rule of law to be obeyed; a remedy simply *redresses* a violation of a rule of law." (*Rex v. Chase Home Finance LLC* (C.D.Cal. 2012) 905 F.Supp.2d 1111, 1153.) "We presume that if Congress had intended to preempt such state law remedies, it would have expressly so stated." (See *Spielholz v. Superior Court* (2001) 86 Cal.App.4th 1366, 1374 [a plaintiff's monetary award under state law was not preempted by a federal regulation]; see also *Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 777-778 [a CCRAA provision creating a private cause of action for its enforcement does not impose any "'requirement or prohibition'" for purposes of preemption analysis under the FCRA, it merely authorizes a consumer to bring an action against the person or entity responsible for the injury, is procedural only, and therefore is not covered by the preemption language of the FCRA].)

Here, the violation of law Kemp is seeking to redress in his ICRAA cause of action is Accurate's alleged violation of section 1786.18 (a)(7), which Kemp asserts Accurate violated in 2020 by reporting his 2011 conviction to his potential employer. And again, that state law *prohibition* is not preempted by the FCRA because section 1786.18 (a)(7) of the ICRAA was in effect on September 30, 1996, and therefore was exempted by Congress from federal preemption. (See 15 U.S.C. § 1681t(b)(1)(E).)

"In making this determination, we are assisted by the strong presumption against displacement of state law that applies in the preemption context. That presumption applies not only to the existence, but also to the extent, of federal preemption. [Citation.] Because of it, 'courts should narrowly interpret the scope of Congress's "intended invalidation of state law" whenever possible.'" (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1064 [holding that the FCRA did not preempt CCRAA claims based on the disclosure of medical information to reporting agencies].)

Accurate contends: "It is not uncommon for massive federal statutes like

17

the FCRA to mitigate the effects of their robust preemption provisions with so-called savings clauses like . . . 'this subparagraph shall not apply to any State law in effect on September 30, 1996.'" (See 15 U.S.C. § 1681t(b)(1)(E).) Accurate argues: "However, the United States Supreme reads these savings clauses narrowly, recognizing that they evince Congress's intent to disavow field preemption, but not necessarily to preserve state laws that directly conflict with federal objectives." Accurate further argues section 1786.18 (a)(7) of the ICRAA, which prohibits an agency from reporting a conviction that predates a report by more than seven years "directly conflicts with" the FCRA, which allows for the reporting of such convictions. Accurate is mistaken.

The ICRAA prohibition in section 1786.18 (a)(7) does not directly conflict with the FCRA under well-settled principles of conflict preemption. "Under the supremacy clause, state law is preempted only if it 'is in direct conflict with federal law such that compliance with both is impossible, or the state law is an obstacle to the accomplishment of the full purposes and objectives of Congress . . . .'" (*Cisneros v. U.D. Registry, Inc.*, *supra*, 39 Cal.App.4th at p. 577.) For example, impossibility conflict preemption would occur if a federal law forbade the selling of avocados with more than seven percent oil, while a state law required avocados to contain at least eight percent oil. (See *Florida Lime & Avocado Growers, Inc. v. Paul* (1963) 373 U.S. 132, 143.)

Here, it is possible for an agency to comply with section 1786.18 (a)(7) of the ICRAA—by not reporting a consumer's conviction that predates an investigative report by more than seven years—without violating section 1681c(a)(5) of the FCRA, which allows for—*but does not require*—the reporting of such convictions.[7] (See, e.g.,

---

[7] Accurate does not argue the CCRAA *directly conflicts with* the FCRA, even though the challenged ICRAA prohibition is identical to the same prohibition in the CCRAA, which again prohibits agencies from reporting: "Records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years." (§§ 1785.13 (a)(6), 1786.18 (a)(7).) It is curious that Accurate contends the ICRAA directly conflicts with the FCRA, but Accurate is not making that same argument as to the CCRAA.

*Mutual Pharmaceutical Company, Inc. v. Bartlett* (2013) 570 U.S. 472, 479-480 [finding conflict preemption where it was impossible for pharmaceutical companies manufacturing generic drugs to obey both a federal law requiring the use of one label and a state law requiring the use of a different label at the same time]; *Gade v. National Solid Wastes Management Association* (1992) 505 U.S. 88, 98 [conflict preemption only exists where the concomitant compliance with both federal and state regulations is impossible].)

Further, the ICRAA prohibition against the reporting of a conviction that predates a report by more than seven years is not an obstacle to the purposes and objectives of Congress. Indeed, the ICRAA prohibition is entirely consistent with the consumer protection goals of the FCRA. (See *Connor*, *supra*, 5 Cal.5th at p. 1032 [the CCRAA and the ICRAA were modeled after the FCRA and "were enacted to ensure that consumer reporting agencies 'exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy'"]; *Cisneros v. U.D. Registry, Inc.*, *supra*, 39 Cal.App.4th at p. 577 ["California's decision to offer greater protection to the consumer . . . does not conflict with" the FCRA]; *Gomon v. TRW, Inc.* (1994) 28 Cal.App.4th 1161, 1173 [attorney fee provision in a state consumer protection statute was not preempted by federal law where it did not "conflict with the FCRA, nor is it an obstacle to [the FCRA's] purposes and objectives"].)

In conclusion, we note the parties have argued several competing public policy concerns; however, we find it unnecessary to address any potential consequences of our interpretation because we find the relevant provisions of the ICRAA, the CCRAA, and the FCRA to be easily understood and unambiguous. (See *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC*, *supra*, 61 Cal.4th at pp. 837-838, italics added ["'*In cases of uncertain meaning*, we may also consider the consequences of a particular interpretation, including its impact on public policy'"].)

III

DISPOSITION

Kemp's writ petition in case No. G061122 is granted. Accurate's writ petition in case No. G061124 is denied. Let a peremptory writ of mandate issue directing the respondent court to vacate its prior order, which partially sustained Accurate's demurrer, and to issue a new order overruling the demurrer in its entirety.

As the prevailing party in both petitions (case Nos. G061122, G061124), Kemp is entitled to recover costs. (See Cal. Rules of Court, rule 8.493(a)(1)(A).)


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MARKS, J.*

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.